298 A.2d 529.

JOSEPH D. PADULA *et ux. vs.* J. J. DEB-CIN HOMES, INC.

JANUARY 11, 1973.

PRESENT: Roberts, C.J., Paolino, Powers, Joslin and Kelleher, JJ.

ROBERTS, C. J.  This is a civil action to recover damages

in the amount of $3,000 from a defendant contractor alleged to have resulted from a breach of the contractor's implied warranty of habitability of a dwelling house. After a trial to a jury in the Superior Court, a verdict was returned for the defendant. The plaintiffs then filed a motion for a new trial and subsequently a motion for a directed verdict. Their motion for a new trial was granted on the issue of damages only, and their motion for a directed verdict was granted with respect to liability. The defendant is now prosecuting an appeal in this court from that order.

The record discloses that defendant corporation engaged in the business of building dwelling houses and apartments and that sometime in 1967 it had completed the erection of a dwelling house on Wood Cove Drive in the town of Coventry. Thereafter, on December 27, 1967, plaintiffs purchased this dwelling house from defendant builder and began occupancy thereof on January 22, 1968. It does not appear to be disputed that on January 28 of that year, during a heavy rainstorm, water flowed into the basement of the building, causing severe damage to a family room and basement, as well as to personal property stored therein. Testimony was adduced through plaintiffs also for the purpose of establishing that certain appliances installed in the premises were either inoperative or defective. These included a hot water heater defectively installed and a garbage disposal and a number of thermostats through the house improperly wired and defective.

The trial justice instructed the jury that "[i]n this state in the sale of a new dwelling house there is an implied warranty made by the seller to the buyer that the dwelling house is reasonably fit for human habitation. * * * [A]long with the contract of sale * * * is the unstated implied warranty of fitness * * *." To that portion of the charge defendant excepted. In this court defendant contends that

the instruction thus given to the jury by the court, that the law in this state imposes an implied warranty of habitability on the builder of a house that he subsequently sells, was erroneous. In support of this contention defendant urges that the principle of caveat emptor has never been overruled or abandoned in this jurisdiction.

The question here, in our opinion, is not whether the principle of caveat emptor has been overruled or abandoned in this state but whether we will join the increasing number of jurisdictions that hold that the builder of a house selling it to another impliedly warrants that such dwelling is reasonably fit for its intended use, human habitation. This is an era when mass production and commercialism have extended themselves into the realm of home construction and in which a customer purchasing a new dwelling from the builder thereof must rely on his skill and workmanship.

We think that the courts which have adopted the principle of implied warranty of habitability have done so on sound ground. In *Bethlahmy* v. *Bechtel,* 91 Idaho 55, 67, 415 P.2d 698, 710 (1966), the Idaho Supreme Court said: "The old rule of caveat emptor does not satisfy the demands of justice in such cases. The purchase of a home is not an everyday transaction for the average family, and in many instances is the most important transaction of a lifetime. To apply the rule of caveat emptor to an inexperienced buyer, and in favor of a builder who is daily engaged in the business of building and selling houses, is manifestly a denial of justice."

While defendant in the instant case urges that we retain and apply the doctrine of caveat emptor to the transaction under consideration, he has given us no sound reason for continuing to apply that doctrine. A reading of the more recent cases in this area of the law provides us with numerous examples of the harshness and injustice of this ancient common-law doctrine when applied to the sale of a new

house by the builder-vendor. In *Rothberg v. Olenik*, 128 Vt. 295, 305, 262 A.2d 461, 467 (1970), the court said, referring to the retention of that doctrine in the instant circumstances: "The law should be based upon current concepts of what is right and just and the judiciary should be alert to the never-ending need for keeping its common law principles abreast with the times. Ancient distinctions which make no sense in today's society and tend to discredit the law should be readily rejected * * *."

Our research discloses an abundance of judicial opinion exhaustively researched and excellently written that persuades us to adopt the doctrine that where a builder-vendor sells a house, either new or under construction, he implicitly warrants that the construction has been or will be done in a workmanlike manner and that the dwelling will be reasonably fit for human habitation. For this reason we will refrain from duplicating the excellent work of so many eminent jurists and text writers.[1]

Therefore, we conclude that the trial justice was not in error and that where there is a sale of a new house by a vendor who is also the builder thereof, there is an implied warranty of reasonable workmanship and habitability sur-

---

[1]*See, e.g., Wawak* v. *Stewart,* 247 Ark. 1093, 449 S.W.2d 922 (1970); *Carpenter* v. *Donohoe,* 154 Col. 78, 388 P.2d 399 (1964); *Vernali* v. *Centrella,* 28 Conn.Supp. 476, 266 A.2d 200 (Super. Ct. 1970); *Bethlahmy* v. *Bechel,* 91 Idaho 55, 415 P.2d 698 (1966); *Theis* v. *Heuer,* Ind., 280 N.E.2d 300 (1972); *Weeks* v. *Slavik Builders, Inc.,* 24 Mich.App. 621, 180 N.W.2d 503 (1970); *Waggoner* v. *Midwestern Development, Inc.,* 83 S.D. 57, 154 N.W.2d 803 (1967); *Humber* v. *Morton,* 426 S.W.2d 554 (Tex. 1968); *House* v. *Thornton,* 76 Wash.2d 428, 457 P.2d 199 (1969). *See also* Bearman, *Caveat Emptor in Sales of Realty — Recent Assaults upon the Rule,* 14 Vanderbilt L. Rev. 541 (1961); Haskell, *The Case for an Implied Warranty of Quality in Sales of Real Property,* 53 Georgetown L.J. 633 (1965); Jaeger, *The Warranty of Habitability,* 46 Chicago-Kent L. Rev. 123 (1969), 47 Chicago-Kent L. Rev. 1 (1970); Roberts, *The Case of the Unwary Home Buyer: The Housing Merchant Dit It,* 52 Cornell L.Q. 835 (1967).

viving the delivery of the deed. This is not to hold that the builder is required to construct a perfect house. Whether the house is defective is determined by the test of reasonableness and not perfection, and the duration of such liability after the taking of possession is to be determined by standards of reasonableness.

It appears from the record that plaintiffs, after the verdict was returned, for the first time moved for a directed verdict. Nothing in the provisions of Super. R. Civ. P. 50 makes any provision for making a motion for a directed verdict after the verdict has been returned. That rule provides only that the motion may be made at the close of the opponent's testimony or at the close of all of the evidence and that the motion may be decided when made or may be reserved for decision after the return of the verdict. The granting, therefore, of the motion for directed verdict was erroneous.

The plaintiffs have argued in this court that the trial justice properly treated their motion for a directed verdict as a motion for judgment *non obstante veredicto*. In *Russo v. Odell*, 105 R. I. 349, 357, 252 A.2d 135, 139 (1969), we concluded that a motion for judgment *non obstante veredicto* imposes unnecessary burdens on the trial justice, inasmuch as the moving party has had full opportunity in the course of all the evidence to obtain a determination of the legal sufficiency thereof through a motion for a directed verdict which the trial court may reserve for decision after the verdict has been returned. Here plaintiffs failed to so move for a directed verdict at the appropriate time provided in the rule and are, therefore, without any opportunity to have the sufficiency of the evidence weighed once the verdict is returned.

Lastly, we turn to consider defendant's contention that the trial justice erroneously granted plaintiffs' motion for a new trial. We cannot agree. It is clear from the record

that on the motion the trial justice, in an exercise of his independent judgment, considered and passed upon all of the material evidence in the case in the light of his charge to the jury and upon the weight and credibility of the witnesses. *Barbato* v. *Epstein,* 97 R. I. 191, 196 A.2d 836 (1964). That being so, the burden is on defendant to show that the trial justice was clearly wrong in ordering a new trial in that he either overlooked or misconceived material evidence on a controlling issue. *Labbe* v. *Hill Brothers, Inc.,* 97 R. I. 269, 197 A.2d 305 (1964).

Nothing in the record discloses that the defendant complied with the burden stated above. A close scrutiny fails to disclose that the defendant directed our attention to any specific items of evidence that the trial justice either misconceived or overlooked. On the other hand, the trial justice pointed out the paucity of evidence adduced by the defendant of sufficient probative force to negate the liability of the defendant for a breach of the implied warranty. He stated that he believed the testimony of the plaintiffs as to the cause of the damage and to conditions existing in the structure that would sustain a finding of a breach of that warranty. Following our long-standing rule that upon a motion for a new trial we will not disturb the findings of the trial justice unless he was clearly wrong, we hold that the trial justice did not err in granting the plaintiffs' motion for a new trial.

The defendant's appeal is denied and dismissed, and the cause is remanded to the Superior Court for a new trial.

*Marvin A. Brill,* for plaintiffs.

*Louis A. Petrarca, Jr., Joseph J. McGair,* for defendant.