327 A.2d 831.

# Donat A. Casavant *et ux. vs.* Hazel Campopiano *et al.* and Recamp Enterprises, Inc.

NOVEMBER 13, 1974.

Present: Roberts, C. J., Paolino, Joslin, Kelleher and Doris, JJ.

ROBERTS, C. J. This civil action was brought by the plaintiffs, Donat A. and Frances L. Casavant, against Hazel and Remo Campopiano and Recamp Enterprises, Inc.[1] to recover damages incurred by the defendants' alleged breach of an implied warranty of habitability. The case was tried to a justice of the Superior Court sitting without a jury, who denied a motion to dismiss the suit as against Hazel Campopiano, the wife of Remo Campopiano, and found that by reason of the defendants' breach of warranty the plaintiffs had been damaged to the extent of $4,500. From that judgment the defendants are prosecuting an appeal in this court.

It is not disputed that defendant Remo Campopiano had been engaged in the business of building residential structures on speculation for approximately 20 years. The construction of these homes was undertaken without any specific prospective purchasers being in mind. It further appears from the evidence that, upon completion of the basic structure of the house here involved, defendants rented it to a married couple who intended to purchase the house as soon as they were able to secure the necessary financing. Sometime within a year after taking possession, the tenants vacated the premises, and shortly thereafter defendants sold the house to plaintiffs, the deed thereto being dated October 24, 1968. In April of 1969 plaintiffs discovered that the roof of the house was sagging visibly. An inspection disclosed that the roof construction was defective and that such condition constituted a threat to

---

[1]The action against Recamp Enterprises, Inc. was dismissed at trial.

the safety of the occupants. The trial justice found that the value of the house in October of 1968 was $13,000.

The defendants concede that in *Padula v. J. J. Deb-Cin Homes, Inc.*, 111 R. I. 29, 298 A.2d 529 (1973), the court established in this state the rule that a builder-vendor impliedly warrants to a buyer that he constructed the building to be transferred with reasonably good workmanship and that the dwelling is fit for human habitation. They argue, however, that the rule laid down in *Padula* has no application in the instant case. In support of this position, they contend that because of the intervening occupancy by others prior to the sale to plaintiffs, the dwelling was at the time of transfer not a new but a used home, the sale of which is not within the purview of the *Padula* rule.

We cannot agree. In the first place, the thrust of the *Padula* rule was to afford protection to home buyers from the over-reaching of knowledgeable builder-vendors. That there had been an intervening tenancy should not, standing alone, deprive the buyer of that protection. The defendant, Mr. Campopiano, was in a much stronger bargaining position than plaintiff, Mr. Casavant. The former was an experienced developer who had built and sold many homes. Clearly, Mr. Campopiano, who built the house, was in a far better position to determine the condition of the structure of the roof than was Mr. Casavant. The latter, with a ninth-grade education, had purchased a house only once before the instant transaction. The evidence discloses that there was no access to the open space beneath the roof so that if plaintiffs had been sufficiently knowledgeable to evaluate effectively the condition thereof, the lack of access to make such an inspection would have rendered such expertise of no assistance in these circumstances.

Secondly, defendants' argument, as we understand it,

is that because the house had been occupied prior to the sale to plaintiffs, the warranty should not be implied in the subsequent purchaser's favor because the structure is not a new house as contemplated in *Padula*. With this we do not agree. This argument might have merit if the intervening occupancy appeared to be causally connnected with the defective condition of the roof or was of such extended duration as to make an application of the warranties unreasonable. In the absence of such findings, the court will assume that the builder-vendor was responsible for the existence of the defect and that the structure was a "new" house as contemplated in *Padula*.

Thirdly, defendants retained title to the premises for the purpose of selling the house. It is clear that the intention of the builder-vendor was to sell as soon as an advantageous offer was made and that Mr. Campopiano did not intend to use the dwelling as a personal residence or as rental property. Compelling public policy discussed in *Padula* favors implying such warranties in appropriate cases, and this court will not allow that policy to be defeated solely because of an intervening tenancy, particularly where the builder-vendor created such intervening tenancy for the purpose of promoting the sale of the property. In short, we are of the opinion that the intervening tenancy in this case was merely a device to promote a sale by the builder-vendor and, thus, does not require us to hold that the case is outside the purview of the rule laid down in *Padula*.

The defendants contend further that the following clause in the purchase and sale agreement constituted an effective exclusion of the implied warranties of reasonable workmanship and habitability:

> "Full possession of the said premises, free of all tenants is to be delivered to the party of the second part at the time of the delivery of the deed, the said

premises to be then *in the same condition* in which they now are, reasonable use and wear of the buildings thereon, and damage by fire or other unavoidable casualty excepted." (emphasis added)

To effectuate the policies underlying the implied warranties of habitability and reasonable workmanship, the court will construe exclusionary provisions of doubtful meaning strictly against those parties raising such provisions as defenses. The defendants contend that, by reason of plaintiffs' agreeing to taking the premises "in the same condition in which they now are," plaintiffs agreed to accept them "as is" or "with all faults." Courts have been reluctant to construe "acceptance in present condition" clauses as providing sufficient grounds for exclusion of implied warranties with respect to the sale of personalty unless the language is used with specific reference to its effect on warranties. *Compare Hull-Dobbs, Inc.* v. *Mallicoat,* 57 Tenn.App. 100, 415 S.W.2d 344 (1966), *First Nat'l Bank of Elgin* v. *Husted,* 57 Ill.App.2d 227, 205 N.E.2d 780 (1965), *with Tibbitts* v. *Openshaw,* 18 Utah 2d 442, 425 P.2d 160 (1967). The language in the instant case does not meet this standard of specificity of exclusion. For all these reasons, the court holds that plaintiffs' signing the agreement did not constitute a waiver of their rights to the protection of implied warranties.

The defendants argue that plaintiffs' inspection of the premises put plaintiffs on notice of the true condition of the house. It should be noted that plaintiffs had no access to the attic and, thus, even if they had the expertise to determine the quality of construction, they could not have done so. The defendants' argument here is wholly illusory.

General Laws 1956 (1969 Reenactment) §9-21-10 does not govern cases other than those sounding in tort. *Isserlis*

v. *Director of Pub. Works,* 111 R. I. 164, 300 A.2d 273 (1973). Consequently, the trial justice properly refused to apply this provision in awarding interest at 6% from the date of the deed. Thus, we reject the argument of both parties that the statute to which they allude controls the assessment of interest in this case.

The defendants contend that the trial court erred in denying their motion to dismiss the suit as against Mrs. Campopiano. The record indicates that Mrs. Campopiano was a hairdresser by occupation and took no part in her husband's business management or dealings. Her only connection with this case was the signing of the deed and the holding with her husband of a joint checking account from which Mr. Campopiano drew checks to pay subcontractors. This evidence is insufficient to establish vicarious liability through either a partnership or agency theory. Thus, it is our opinion that the trial justice erred in denying Mrs. Campopiano's motion to dismiss the plaintiffs' suit against her.

The defendant Hazel Campopiano's appeal is sustained, and the order of the trial justice denying her motion to dismiss from which she appealed is reversed; the defendant Remo Campopiano's appeal is denied and dismissed, the judgment from which he appealed is sustained, and the cases are remanded to the Superior Court for further proceedings.

*Almonte, Lisa & Pisano, Paul J. Pisano,* for plaintiffs.

*Higgins, Cavanagh & Cooney, Gerald C. DeMaria,* for defendants.