Gilbert L. KRAINE

v.

**Robert E. DERECKTOR of
Rhode Island, Inc.**

No. 85–234–Appeal.

Supreme Court of Rhode Island.

July 15, 1987.

Kathleen Managhan, Joseph T. Houlihan, Corcoran, Peckham & Hayes, Newport, for plaintiff.

Scott C. Turner, Newport, G. Chandler Beals, Providence, for defendant.

## OPINION

SHEA, Justice.

This breach-of-employment-contract case comes before us following a Superior Court jury verdict in favor of Gilbert Kraine (plaintiff). Robert E. Derecktor of Rhode Island, Inc. (defendant) appeals from the trial justice's denial of its motion for a new trial. We affirm.

On January 21, 1983, plaintiff filed a complaint alleging that defendant breached its contract of employment and that plaintiff suffered loss of income as a result. The case was tried before a Superior Court jury on January 22 and 23, 1985. On Janu-

ary 21, 1985, defendant filed a *pro hac vice* motion for Albert J. Gaynor, an out-of-state attorney who had "been [defendant's] long-standing representative," to act as trial counsel. The motion asserted that Mr. Gaynor had "extensive knowledge as to the shipbuilding business" because of his long association with defendant. The trial justice denied the motion, stating that he "[did not] see any specific expertise that is necessary in this particular case." He also noted that there was "no indication through the course of discovery that there would be an out-of-state attorney entering an appearance." He did, however, allow Mr. Gaynor to sit at counsel table during the trial.

The evidence presented established that in July 1982, plaintiff, who was then employed by Pennsylvania Shipbuilding Company in Chester, Pennsylvania, was contacted by an employee of defendant and asked if he "would be willing to talk to Mr. Derecktor"[1] about employment. On August 6, 1982, plaintiff came to Newport where he met Derecktor, discussed the problems of running a shipyard, and toured defendant's shipyard.

On the following day Derecktor offered plaintiff a position as general manager at a salary of $60,000 per year. The plaintiff declined the offer, however, stating that he "would have to leave a contract that ran for another eighteen months at approximately $50,000. According to plaintiff, the parties then had the following exchange:

"A. I told him I'd come up for a year for $75,000.

"Q. What did he say to you?

"A. He said, 'If I give you $75,000, don't ask for any extras during the year.'

"Q. And did you have any further conversation regarding the terms and conditions of the contract at that time?

"A. Well, I asked him, 'What about future increases?' And he said, 'We will discuss that after the year.'"

On August 11, 1982, plaintiff met with and attempted to persuade Derecktor to give him a three-year contract but Derecktor stated that he "preferred to go year-to-year." On the next morning, plaintiff advised Derecktor that he would give his employer two weeks' notice as soon as he received defendant's offer in writing.

The plaintiff returned to Newport on August 18, 1982, where he was again offered the position. He accepted the position and was advised by Derecktor to "work out the details with John Anderson," defendant's industrial relations director. Shortly after his return to Pennsylvania, plaintiff received a "letter dated August 19, 1982, from [defendant] to [him], spelling out the terms of [the] agreement * * * signed by John F. Anderson." The letter stated in pertinent part:

"Dear Gil:

I am pleased that you have accepted the position of General Manager for the WMEC Program.

Following are the items which I believe to be inclusive of the areas we discussed:

1. Annual salary of $75K.

2. Blue Cross-Blue Shield will not be paid by the company for approximately one year due to prior arrangements."

After receiving the letter, plaintiff gave his employer two weeks' notice.

The plaintiff started work on September 7, 1982. Throughout September and October of 1982, he stated that he "had a general reaction from [Derecktor] that he seem[ed] to be pleased with what [I] was doing and * * * was finding out about the yard." In early November, Derecktor told plaintiff "he thought that we were holding too many [staff] meetings in the yard." On the morning of November 9, 1982, Derecktor told plaintiff that "it wasn't working, that he didn't know how to make it work, and that he wanted [me] to leave." The plaintiff was given his final paycheck that afternoon and left the shipyard the next day.

After its cross-examination of plaintiff, defendant moved for a directed verdict,

1. Robert Derecktor is the owner of the corporate defendant, Robert E. Derecktor of Rhode Island, Inc. In this opinion he will be referred to as Derecktor and the corporation will be referred to as the defendant.

asserting that no contract had been proven. The trial justice denied the motion, stating that:

> "The Court can come to the conclusion at this point that there was an agreement between the parties. The plaintiff had indicated that there was in fact an agreement, that they discussed the terms, and that it was for a period of one year. And he says 'Don't ask for any more during the course of the year.' Based upon that, the motion for directed verdict is hereby denied."

John Anderson was called by defendant and testified that he told plaintiff, in response to a request for an employment contract, that "we don't do contracts because we had had a bad experience with the former general manager over a contract." Derecktor testified that there was no employment contract with plaintiff. He further stated that he had given an employment contract on only one occasion. He told plaintiff that he had been "badly burnt on having an employment contract" and "wouldn't do that again."

During his charge to the jury the trial justice stated:

> "I'm going to charge you as a matter of law—because the Court has the duty to preliminarily inspect the contract and determine if it's in accordance with the law before it submits it to a jury, that it is in fact a legal, binding contract, or whether the terms are for you to determine, or whether you are to determine whether there is a contract—and the Court charges you as a matter of law that the agreement contained in Exhibit number 1 of the plaintiff is a lawful, binding and enforceable contract between the parties at the time that they entered into it, or at the time that there was an acceptance to it."

The trial justice further stated that:

> "It's your duty * * * to determine from all of the facts presented before you * * what the terms of the contract are, and what the duties and obligations that

were imposed upon the plaintiff and the defendant by such terms that were agreed upon, whether those terms were written or oral."

After the jury instructions, defendant objected to the "charge as to being instructed as to the contract based on—[t]he *Hatch* case said that the intention of the parties should be controlling; and by not putting that to the jury, you've taken that decision away." Following its deliberations the jury returned a verdict for plaintiff in the amount of $61,000 that was subsequently reduced to $39,015 by what was in effect a stipulation between the parties.

The defendant later filed a motion for a judgment notwithstanding the verdict[2] or, in the alternative, a motion for a new trial. The defendant objected to the trial justice's jury instruction "that there was a contract in this matter" as well as his denial of the "pro hac vice [motion] for Mr. Gaynor." After briefly reviewing the standards for review on a motion for a new trial, the trial justice denied the motion, stating:

> "really, it was basically a one witness case—and I find that the jury did not err, and that reasonable minds might have differed, but I think that they had to come to the same conclusion that they did."

On appeal defendant asserts that the jury should have been allowed to decide whether a contract existed between the parties. It contends, specifically, that a cursory description of terms and conditions does not satisfy the criteria for the formation of a written contract. Furthermore, because defendant's policy of not using employment contracts was undisputed, defendant maintains that the trial justice erred in finding a contract as a matter of law. The defendant also maintains that it was seriously prejudiced by the denial of the *pro hac vice* motion for Mr. Gaynor at trial since local counsel was not adequately prepared to try the case.

**2.** There is no provision for a judgment notwithstanding the verdict under Rhode Island's rules of civil procedure. *Padula v. J.J. Deb-Cin*

*Homes, Inc.,* 111 R.I. 29, 33, 298 A.2d 529, 532 (1973).

We begin by restating the well-settled standard utilized by a trial justice on a motion for a new trial. He or she must pass upon the weight of the evidence and the credibility of witnesses and may accept or reject conflicting testimony "as if he [or she] were sitting as a trier of fact." *Payne v. K–D Manufacturing Co.,* 520 A.2d 569, 572 (R.I.1987); *see Pisaturo v. Raso,* 507 A.2d 1357 (R.I.1986). Moreover, the trial justice

"need not make a comprehensive evaluation of the evidence. Nevertheless, reference should be made with some specificity to the particular facts that motivated the trial justice's decision, in order that this court may determine the appropriateness of the action. A decision after making the foregoing analysis will be overturned on appeal only if the trial justice has overlooked or misconceived material evidence or is otherwise clearly wrong." *Payne,* 520 A.2d at 572.

The trial justice characterized this as a "one witness case" and denied defendant's new trial motion. Although his analysis was brief, the record before us reveals that his conclusion was motivated by plaintiff's testimony to which the trial justice referred when he denied defendant's motion for a directed verdict. Based on plaintiff's recollection that Derecktor told him "Don't ask for any more [money] during the course of the year," the trial justice concluded that a contract for "a period of one year" did in fact exist.

We have carefully reviewed the record in this case and cannot state that the trial justice misconceived or overlooked material evidence or was otherwise clearly wrong. The record reveals some evidence of an employment contract for a period of one year based on the testimony of both plaintiff and Derecktor as well as on the basis of the August 19, 1982 letter from defendant to plaintiff. Hence, we do not find that the evidence in this case clearly preponderates against the jury's determination.

The defendant also challenges the trial justice's instruction that the letter of August 19, 1982, constituted a contract as a matter of law. We agree, however, with the trial justice's conclusion in this case, as set forth in his charge to the jury, that a contract did in fact exist between the parties. We note the well-settled rule in Rhode Island which states that when the duration of an employment contract is uncertain, the contract is considered terminable at will. *Payne,* 520 A.2d at 573. This rule applies "even in situations in which the agreement of service provides that the employee shall receive a fixed sum for a stated period of service." *Id.* Although the instructions did not set out precisely the significance of the length of the contract, this issue was not distinctly objected to nor were the grounds of the objection clearly stated. Rule 51(b) of the Superior Court Rules of Civil Procedure prevents a party

"from challenging an erroneous instruction unless he lodges an objection to the charge which is specific enough to alert the trial justice as to the nature of his alleged error." *Majewski v. Porter,* 121 R.I. 757, 764–65, 403 A.2d. 248, 252 (1979).

The defendant's objection could in no way be construed to have alerted the trial justice to the precise issue of the length of the contract. The defendant's allusion to the case of *Hatch v. Sallinger,* 47 R.I. 395, 398, 133 A. 621, 623 (1926) in its objection is also unconvincing because that general reference failed to alert the trial justice that the jury's determination of the length of the contract was crucial to its case. Hence, the trial justice was given no opportunity to amend his instruction accordingly. Consequently, this issue may not be raised on appeal.

The defendant also contends that it was seriously prejudiced by the deprivation of Mr. Gaynor's representation at trial since local counsel was not adequately prepared. The defendant further asserts that the existence of a long-standing relationship between attorney and defendant should have been sufficient to satisfy the criteria set forth in Supreme Court Rule 40

(as amended by the court Sept. 28, 1983).[3] We agree. Even though our review of the record reveals, however, that the trial justice could have easily granted the motion, "[a]bsent a showing of abuse of discretion or error of law, we will not disturb the ruling of a trial justice in whose sound judicial discretion rests the determination of such a motion." *Ludwig v. Kowal,* 419 A.2d 297, 304 (R.I.1980). Because we find no prejudice to the defendant resulting from the denial of the *pro hac vice* motion, we deny the appeal on that issue also.

For all of the reasons stated, the defendant's appeal is denied and dismissed, the judgment appealed from is affirmed, and the papers of this case are remanded to the Superior Court.

---

3. Supreme Court Rule 40 (as amended by the court Sept. 28, 1983) states:

"Any attorney who is a member in good standing of the bar of any other state, not residing in this state, may, upon special and infrequent occasion and for good cause shown upon written motion presented by a member of the bar of this state, be permitted in the discretion of the court to participate to such an extent as the court may prescribe in the presentation of a cause or appeal in any court of this state, if such other state grants like privileges to members of the bar, in good standing, of this state; provided, however, that a member of the bar of this state must sign all pleadings, briefs and other papers filed with the court and assume full responsibility for them and for the conduct of the cause and of the attorney to whom such privilege is accorded. Good cause for according such privilege shall be limited to facts or circumstances affecting the personal or financial welfare of the client and not the attorney. Such facts may include but are not limited to the following: (a) a showing that the cause involves a complex field of law in which the nonresident attorney is a specialist, (b) a long-standing attorney-client relationship, (c) lack of local counsel with expertise in the field involved, (d) the existence of legal questions involving the law of the foreign jurisdiction, (e) the need for extensive discovery proceedings in the foreign jurisdiction."