January 11, 2023

| | | |
|---|---|---|
| Premier Land Development | : | |
| v. | : | No. 2021-72-Appeal. (PC 12-341) |
| Joseph Kishfy et al. | : | |

| | | |
|---|---|---|
| Bel Air Tile Company, Inc., et al. | : | |
| v. | : | No. 2021-73-Appeal. (PM 12-1218) |
| Joseph Kishfy. | : | |

NOTICE: This opinion is subject to formal revision before publication in the Rhode Island Reporter. Readers are requested to notify the Opinion Analyst, Supreme Court of Rhode Island, 250 Benefit Street, Providence, Rhode Island 02903, at Telephone (401) 222-3258 or Email: opinionanalyst@courts.ri.gov, of any typographical or other formal errors in order that corrections may be made before the opinion is published.

Premier Land Development            :

            v.                      :            No. 2021-72-Appeal.
                                                 (PC 12-341)
        Joseph Kishfy et al.         :


Bel Air Tile Company, Inc., et al.   :

            v.                      :            No. 2021-73-Appeal.
                                                 (PM 12-1218)
        Joseph Kishfy.               :


Present:  Suttell, C.J., Goldberg, Robinson, Lynch Prata, and Long, JJ.

## O P I N I O N

**Justice Goldberg, for the Court.**  This case came before the Supreme Court on October 4, 2022, pursuant to an order directing the parties to appear and show cause why the issues raised in this appeal should not be summarily decided.  The defendant, Joseph Kishfy (defendant), appeals from a final judgment[1] entered in

---

[1] The underlying cases, PC 12-341 and PM 12-1218, were consolidated by order of the Superior Court on January 5, 2018.

favor of Premier Land Development (plaintiff), arising from a construction contract.[2] After considering the parties' written and oral submissions and reviewing the record, we are satisfied that cause has not been shown and that this case may be decided without further briefing or argument. For the reasons stated herein, we affirm the judgment of the Superior Court.

**Facts and Travel**

In August 2011, defendant entered into a purchase-and-sales agreement with Robert Lanni (Lanni) for property located at 15 Paddock Drive, Lincoln, Rhode Island, for $630,000.00. The defendant agreed to purchase the property "as is," and waived all inspections and contingencies, except for radon gas testing. The defendant himself inspected the property prior to executing the purchase-and-sales agreement. The defendant testified that the property was structurally complete on the exterior, with the exception of a rear deck, while the interior of the property was lacking a kitchen and most flooring, apart from some flooring in the family room.[3]

A real estate closing was held on August 17, 2011. On the date of the closing, defendant also entered into a separate contract, designated as an "Amendment to Purchase and Sales/Construction Agreement" (construction contract) with Lanni and

---

[2] Although, there is a suggestion by defendant that this property constituted new construction.

[3] This property was an existing home, built in 1995.

plaintiff, which Lanni signed as the owner of the property, and David Corsetti signed as the contractor.[4] This transaction terminated Lanni's connection to this case. In the construction contract, defendant agreed to pay plaintiff the sum of $150,000.00 for improvements to the residence at 15 Paddock Drive. Payment was to occur in three installments, to be mutually agreed upon by the parties, with a project completion date of no later than October 28, 2011. A time-is-of-the-essence clause was included in the agreement.

The construction contract contained an itemized list of improvements to be made to the property, for a total project cost of $150,000.00. The work performed by plaintiff was to be guaranteed for one year from the date of completion and the construction contract outlined the allowances for the improvements to be made on the home. If the amount spent was lower than the allowance granted to defendant, he would receive a credit; and he would pay the difference if the amount paid was greater than the allowance.[5]

Work commenced in August 2011; defendant paid plaintiff $40,000.00 as an initial deposit. A handwritten note on the check indicated that it was a "1st draw to

_____

[4] The parties filed a stipulation that David Corsetti, at all material times, was doing business as Premier Land Development.

[5] The labor to install the kitchen and vanities, and all plumbing and hardware, was included in the $630,000.00 sale price of the property, and not the construction contract.

David Corsetti." A second check in the amount of $11,000.00 was tendered to plaintiff on November 11, 2011. The defendant made no further payments to plaintiff.

As work progressed, there were numerous change orders to the originally agreed-upon design of the home, all at defendant's behest. According to plaintiff, defendant changed the entire layout of the kitchen, which required its subcontractors to install a new gas line and rewire the electrical lines in the kitchen. The plaintiff informed defendant that changing the layout of the kitchen would be an extra cost under the construction contract. Included in the changes to the kitchen layout, defendant added a room, which required a subcontractor to "build it, frame it, board, plaster, [and] electric" the space, all of which was an extra cost. The defendant also requested an elaborate, small, mosaic-like tile back-splash that required extensive labor, and led to a delay in procuring the tile because defendant purchased tile from a store different than the one set forth in the construction contract. The plaintiff again informed defendant that these requested changes were above and beyond the scope of the construction contract and would constitute additional charges.

The defendant additionally requested a change in the design of the floor in rooms on the second floor, deviating from the original pattern. The plaintiff authorized subcontractors to perform this additional labor, which represented an

extra cost.  The defendant also sought changes to certain lighting, replacement of existing plugs and switches, and construction of framing for a chandelier.

In addition to an increase in costs, the changes to the design of the home impeded delivery of materials, resulting in delays in the progress of the work.  The owner of Bel-Air Tile Company, Inc., a subcontractor, testified that he was required to return to the project on multiple occasions because the necessary tiles were not on site.  He further testified that he did not receive certain tiles from defendant until November 30, 2011, well after the scheduled completion date of October 30, 2011.

The defendant e-mailed Corsetti on December 5, 2011, regarding the delay in the completion of the work and questioned when the renovations would be completed.  Mr. Corsetti responded that same day reminding defendant that he had assumed the role of quasi-contractor, had completely retrofitted the original design of the house, and that his delay in obtaining and delivering the tile had led to the delay in completion.  Mr. Corsetti also informed defendant that plaintiff was owed a substantial amount of money, the balance of which needed to be addressed.  He e-mailed defendant on December 11, 2011, with an itemized account of the work that had been completed at that point.  There was no response.  In the face of defendant's silence and his failure to satisfy the outstanding invoice, plaintiff and its subcontractors ceased work at the property.  These consolidated actions ensued.

In PC 12-341, plaintiff filed an action against defendant and his wife, Paula Kishfy, alleging one count of breach of contract, one count of unjust enrichment, and one count of breach of the implied covenant of good faith and fair dealing. The defendants' answer denied the allegations of the complaint, and included counterclaims for breach of contract, negligence, and fraud.

In the second case, PM 12-1218, plaintiff's subcontractors, Bel-Air Tile Company, Inc., Continental Engineering & Service Company, Inc., Desimone Electric, Inc., Moran Home Improvement, and Valley Plumbing & Heating, LLC, filed a complaint against defendant, each seeking enforcement of a mechanics' lien, and collectively alleging a count of unjust enrichment. By order entered on January 5, 2018, these actions were consolidated for trial.

After a jury-waived trial in October 2018, judgment was entered for plaintiff in the amount of $58,618.00 plus interest.[6] The trial justice found that Paula Kishfy was not a party to the construction contract and had no liability for the breach of contract. The defendant's counterclaims were dismissed. The defendant timely appealed to this Court and asserts that the trial justice erred in her decision, specifically: (1) in applying the doctrine of merger by deed; (2) in calculating damages; (3) in allocating responsibility for the bearing wall; (4) in finding that the

---

[6] The trial justice also awarded plaintiff attorneys' fees but denied an award of costs.

implied warranty of habitability did not apply; and (5) in finding that the subcontractors' mechanics' liens were assignable to plaintiff.

## Standard of Review

"It is well established that the factual findings of a trial justice sitting without a jury are accorded great weight and will not be disturbed unless the record shows that the findings clearly are wrong or the trial justice overlooked or misconceived material evidence." *Wellington Condominium Association v. Wellington Cove Condominium Association*, 68 A.3d 594, 599 (R.I. 2013) (quoting *Hernandez v. JS Pallet Co.*, 41 A.3d 978, 982 (R.I. 2012)). "If, as we review the record, it becomes clear to us that the record indicates that competent evidence supports the trial justice's findings, we shall not substitute our view of the evidence for [that of the trial justice] even though a contrary conclusion could have been reached." *Id.* (quoting *Hernandez*, 41 A.3d at 982).

## Analysis

## Merger by Deed

First, defendant asserts that the trial justice was mistaken in applying the doctrine of merger by deed because he was contracting with two separate parties, as the purchase-and-sales agreement governed the transfer of property from Lanni to defendant, and the construction contract outlined the scope of work to be performed by plaintiff for defendant.

"The doctrine of merger by deed provides that once a warranty deed is accepted it becomes the final statement of the agreement between the parties and nullifies all provisions of the purchase-and-sale agreement." *Lizotte v. Mitchell*, 771 A.2d 884, 887 (R.I. 2001) (quoting *Haronian v. Quattrocchi,* 653 A.2d 729, 730 (R.I. 1995)). In *Lizotte*, this Court held that plaintiffs waived all conditions of the sale when they closed on a property knowing that the lot had not been surveyed and that they had not obtained a building permit. *Id.* The warranty deed "became the final statement of the agreement between the parties, and any purported contract claims were barred by the doctrine of merger by deed." *Id.* at 887-88. In the case at bar, defendant purchased the home "as is" when he accepted the warranty deed and waived all contract claims based on the purchase-and-sales agreement.

Although we agree with defendant that there are two separate contracts in this case, any error by the trial justice in applying the doctrine of merger was harmless because the trial justice found that defendant materially breached the construction contract. We will not "set[] aside a verdict or * * * vacat[e], modify[], or otherwise disturb[] a judgment or order" because of "error or defect in any ruling or order or in anything done or omitted by the court * * * unless refusal to take such action appears to the court inconsistent with substantial justice." Super. R. Civ. P. 61. It is well settled that a "party's material breach of contract justifies the nonbreaching party's subsequent nonperformance of its contractual obligations." *Machado v.*

- 8 -

*Narragansett Bay Insurance Company*, 252 A.3d 1206, 1210 (R.I. 2021) (quoting *Women's Development Corporation v. City of Central Falls*, 764 A.2d 151, 158 (R.I. 2001)).

The trial justice in the case at bar found that defendant "materially breached the [c]onstruction [c]ontract through [his] nonpayment for the original work as well as the increase in the scope of work." The trial justice arrived at this conclusion after a thorough review of testimony and exhibits, finding that the testimony of the subcontractors and plaintiff was credible, and that plaintiff was justified in stopping work on the project, due to defendant's failure to pay. She declared that defendant's increase in the scope of work, his failure to make timely delivery of materials, and nonpayment for the work carried out by plaintiff justified the cessation of work. "[W]hether a party materially breached his or her contractual duties is a question of fact." *Machado*, 252 A.3d at 1210 (quoting *Parker v. Byrne*, 996 A.2d 627, 632 (R.I. 2010)). Accordingly, we decline to disturb the findings of the trial justice.

## Damages

The defendant contends that the trial justice mistakenly calculated the damages amounting to $58,618.00. He alleges that the correct starting point for damages was $69,743.85 (the amount invoiced by the subcontractors), with the $51,000 paid by defendant to plaintiff to be subtracted from this amount. The defendant acknowledges that plaintiff may be entitled to a sum for construction

oversight, but he asserts that plaintiff failed to provide any concrete evidence to determine this amount.

"The amount of damages sustained from a breach of contract must be proven with a reasonable degree of certainty * * *." *Management Capital, L.L.C. v. F.A.F., Inc.*, 209 A.3d 1162, 1179 (R.I. 2019) (quoting *Marketing Design Source, Inc. v. Pranda North America, Inc.*, 799 A.2d 267, 273 (R.I. 2002)). A plaintiff, however, "will not be denied recovery merely because the damages are difficult to ascertain," as long as they "prove damages with reasonable certainty." *Id.* (quoting *Sophie F. Bronowski Mulligan Irrevocable Trust v. Bridges*, 44 A.3d 116, 120 (R.I. 2012)). "The existence of damages, including their certainty, is a question for the factfinder to decide." *Id.* (quoting *Fogarty v. Palumbo*, 163 A.3d 526, 537 (R.I. 2017)).

The trial justice found the testimony of the subcontractors and invoices submitted for the expanded work completed on the project totaling $41,118.00, copies of checks provided by plaintiff, as well as plaintiff's testimony and its claims of expenses, to be credible. The two checks tendered by defendant totaled $51,000.00, an amount less than the invoices submitted by the subcontractors, and far short of the agreed-upon $150,000.00 in the construction contract. In addition to the $51,000.00 paid to plaintiff, defendant was credited with $81,500.00 for payments made directly to suppliers and others, leaving a balance of $17,500.00 on the construction contract. The plaintiff credibly established that defendant owes

- 10 -

$41,118.00 for the expanded scope of work and $17,500.00 on the construction contract. Therefore, we are satisfied that the trial justice was correct in awarding damages of $58,618.00 to plaintiff.

**Bearing Wall**

Next, defendant argues that the trial justice erred in denying his claim that plaintiff breached the contract by failing to "support [the] basement bearing wall per engineering specs." The defendant contends that plaintiff cannot sue for breach of contract and then argue that a provision working against plaintiff (the bearing wall provision) should not apply. The defendant further contends that he is entitled to an offset in the amount of $16,550.00 to cover the cost of remediating the bearing wall. We disagree.

The defendant materially breached the construction contract by failing to fulfill his payment obligations and expanding the scope of work without renumeration. Because of defendant's material breach of the construction contract, plaintiff was no longer required to perform. *See Machado*, 252 A.3d at 1210. Thus, we hold that the trial justice properly attributed responsibility for the remediation of the bearing wall to defendant.

**Implied Warranty of Habitability**

The defendant next asserts that the trial justice erred in finding that the implied warranty of habitability did not apply to the work on this property. This Court has

- 11 -

held that, "when a builder-vendor sells a new house or one that is under construction, 'he [or she] implicitly warrants that the construction has been or will be done in a workmanlike manner and that the dwelling will be reasonably fit for human habitation.'" *Nichols v. R.R. Beaufort & Associates, Inc.*, 727 A.2d 174, 177 (R.I. 1999) (quoting *Padula v. J.J. Deb-Cin Homes, Inc.*, 111 R.I. 29, 32, 298 A.2d 529, 531 (1973)). We have, however, "refused to extend the application of these implied warranties to protect used-home buyers in a suit against a vendor who was not also the builder of the house." *Id.* That principle controls our resolution of this issue.

Our review of the record reveals that plaintiff was neither the builder nor seller of the property at 15 Paddock Drive. The defendant was aware that the home was not new construction. The defendant cites *Casavant v. Campopiano*, 114 R.I. 24, 26, 327 A.2d 831, 833 (1974), which applied the warranty of habitability where, after the home was completed, the builder leased the premises for a year to a third party before selling it to the buyer, and also *Nichols*, 727 A.2d at 180, in which this Court held that the implied warranty of habitability applied to subsequent purchasers in their action against the original builder. These cases are not persuasive because plaintiff in the case at bar was tasked with completing the renovations to an existing structure. We are satisfied that the trial justice correctly concluded that the implied warranty of habitability had no application to the case at bar.

**Assignability of Mechanics' Liens**

Lastly, defendant argues that the subcontractor's mechanics' liens were improperly transferred to plaintiff because, he contends, mechanics' liens are not assignable under Rhode Island law. "The purpose of the mechanics' lien law is to 'afford a liberal remedy to all who have contributed labor or material towards adding to the value of the property to which the lien attaches.'" *Alpha Omega Construction, Inc. v. Proprietors of Swan Point Cemetery*, 962 A.2d 733, 738 (R.I. 2008) (quoting *Gem Plumbing & Heating Co. v. Rossi*, 867 A.2d 796, 803 (R.I. 2005)). Mechanics' liens are often utilized "because the subcontractor 'has not been paid by the general contractor with whom the owner has made an agreement for the overall performance of improvement to his land.'" *Id.* (quoting *Faraone v. Faraone*, 413 A.2d 90, 92 (R.I. 1980)).

This Court held in *McDonald v. Kelly*, 14 R.I. 335 (1884), that mechanics' liens are assignable unless a statute declares otherwise. *McDonald*, 14 R.I. at 337-38. The defendant attempts to distinguish this case from *McDonald* by arguing that *McDonald* concerned an assignment to do the work, and not an assignment of rights under a mechanics' lien. According to defendant, because the work was not assigned to plaintiff, there is no assignment of record, and G.L. 1956 § 34-28-4.1 prohibits plaintiff from taking advantage of the mechanics' lien statute, and the subcontractors' mechanics' liens are not assignable to plaintiff. Prior to 2015, §

- 13 -

34-28-4.1 required general contractors, not subcontractors, to serve notice of intent to file a lien within ten days of commencing work or delivering materials, or else lose all rights under the mechanics' lien statute.[7] Section 34-28-4.1, as enacted by P.L. 2006, ch. 630, § 2. The defendant submits that plaintiff's failure to comply with § 34-28-4.1 by not filing a general contractor's lien defeats any mechanics' liens rights. We disagree.

Although we have yet to address this issue, several treatises and other states have found mechanics' liens to be assignable, notably *Hunt Truck Sales & Service, Inc. v. Holopak Village*, 363 So. 2d 27 (Fla. Dist. Ct. App. 1978), which held that "[a] mechanic's lien or a prospective mechanic's lien may be assigned[.]" *Hunt Truck Sales & Service*, 363 So. 2d at 27; *see also* 56 C.J.S. *Mechanics' Liens* § 270 (Nov. 2022 Update). We know of no prohibition against the assignment of a subcontractor's mechanics' lien to the general contractor. Subcontractors have an expectation of payment for work performed under a contract with the general contractor, with whom they are in privity.

Here, the subcontractors perfected their liens in accordance with G.L. 1956 § 34-28-4, and were paid by plaintiff, to its credit. The defendant cannot avoid

---

[7] Section 34-28-4.1 was amended in 2015, substituting "any time prior to commencing work or delivery of materials" for "within ten (10) business days of commencing work or delivery of materials[.]" Section 34-28-4.1, as amended by P.L. 2015, ch. 258, § 1 and P.L. 2015, ch. 279, § 1.

payment under these circumstances. We therefore conclude that the trial justice correctly found that the assignment of the subcontractors' mechanics' liens was proper.

## Conclusion

For the reasons set forth in this opinion, we affirm the judgment of the Superior Court. The papers in this case may be returned to the Superior Court.



**STATE OF RHODE ISLAND**

**SUPREME COURT – CLERK'S OFFICE**
Licht Judicial Complex
250 Benefit Street
Providence, RI  02903

## OPINION COVER SHEET

| | |
|---|---|
| **Title of Case** | Premier Land Development v. Joseph Kishfy et al. <br><br> Bel Air Tile Company, Inc., et al. v. Joseph Kishfy. |
| **Case Number** | No. 2021-72-Appeal. <br> (PC 12-341) <br><br> No. 2021-73-Appeal. <br> (PM 12-1218) |
| **Date Opinion Filed** | January 11, 2023 |
| **Justices** | Suttell, C.J., Goldberg, Robinson, Lynch Prata, and Long, JJ. |
| **Written By** | Associate Justice Maureen McKenna Goldberg |
| **Source of Appeal** | Providence County Superior Court |
| **Judicial Officer from Lower Court** | Associate Justice Sarah Taft-Carter |
| **Attorney(s) on Appeal** | For Plaintiff: <br><br> John O. Mancini, Esq. |
| | For Defendant: <br><br> Barry J. Kusinitz, Esq. |