**Elmer W. NORDEN et al.**

v.

**UNITED STATES of America.**

**Civ. A. No. 2427.**

United States District Court
D. Rhode Island.
Sept. 16, 1960.

Albert J. Hoban, Providence, R. I., for plaintiffs.

Joseph Mainelli, U. S. Atty., Arnold Williamson, Jr., Asst. U. S. Atty., Providence, R. I., for defendant.

DAY, District Judge.

This is an action brought under the provisions of Title 28 U.S.C.A. § 1346(b). The plaintiffs, Elmer W. Norden and Thelma J. Norden, his daughter, seek to recover herein damages for losses alleged to have been sustained by them as the result of the crash of an airplane, owned by the defendant and operated by its agent, on their improved real estate in the Town of North Kingstown, in the State of Rhode Island.

The facts may be briefly summarized. On May 18, 1957 the plaintiffs were the owners of certain improved real estate in said town comprising a house, garage and approximately 6.48 acres of land, a small part of which, contiguous to said structures, was landscaped; on that date during the observance of "Armed Forces Day" a navy plane from the adjoining naval air base at Quonset Point, Rhode Island, took off from said air base and in undertaking to execute a low pass, so-called, crashed on the plaintiff's real estate; its pilot was killed and the plane was practically demolished; in its landing, the plane cut a wide swath through white oak, pine and other trees over an area of approximately 1.2 acres before coming to rest on the ground; the force of the concussion seriously damaged the chimneys on the plaintiffs' house and on their garage; and approximately 408 trees in said woods area were either destroyed or seriously damaged.

Plaintiffs, of necessity, offered no evidence as to the particulars in which the defendant was negligent and defendant offered no evidence to exculpate it from any inferences of negligence arising from said crash, merely contenting itself with its formal denial of any negligence on its part. It is conceded by the defendant that the pilot thereof was its agent and that he was acting in the course of and in the scope of his employment at the time of said accident.

Accordingly the trial was mainly devoted to the presentation of expert testimony as to the extent of the damages sustained by the plaintiffs. In passing, it may be noted that this expert testimony, while sharply conflicting, was in some respects far from impressive.

The question of the defendant's liability requires little discussion. The evidence shows that the day of the crash was clear and ideal for flying. In my opinion this case is a routine case for the application of the doctrine of res ipsa loquitur. Under the circumstances existing here I am satisfied that the defendant was negligent either in the operation or in the maintenance of said plane and that said negligence was the proximate cause of its falling, with resultant damages to the plaintiffs. O'Connor v. United States, 2 Cir., 1958, 251 F. 2d 939; United States v. Kesinger, 10 Cir., 1951, 190 F.2d 529; D'Anna v. United States, 4 Cir., 1950, 181 F.2d 335; Parcell v. United States, D.C.W.Va.1951, 104 F.Supp. 110. Cf. United States v. Hull, 1 Cir., 1952, 195 F.2d 64.

There remains the issue of the amount which the plaintiffs are entitled to recover as damages for the harm sustained by them. While there is a conflict in the testimony as to the reasonable cost of necessary repairs to plaintiffs' house and garage, the credible evidence satisfies me that $995, as claimed by their expert, Mr. James A. Reilly, Jr., an experienced contractor, is a fair and reasonable allowance therefor.

The ascertainment of the amount which will fairly compensate the plaintiffs for the damages to their land presents a much more troublesome question.

The defendant contends that the proper measure of damages in this case, irrespective of the nature of the damages sustained by the plaintiffs, is the difference in the value of plaintiffs' real estate before and after the crash of its aircraft. I do not think this is necessarily the sole measure of damages to be applied in a case such as this where the damaged land is a part of the plaintiffs' homestead. In Restatement, Torts, Sec. 929, it is said that for harm to land from a past invasion and not amounting to a total destruction in value, recoverable damages include compensation for, at the plaintiffs' election, "the difference between the value of the land before the harm and the value after the harm or the cost of restoration which has been or may be reasonably incurred, * * *" Comment b to said section points out that "Even in the absence of value arising from personal use, the reasonable cost of replacing the land in its original position is ordinarily allowable as the measure of recovery." The Restatement then points out in Comment b that " * * * If, however, the cost of replacing the land

in its original condition is disproportionate to the diminution in the value of the land caused by the trespass, unless there is a reason personal to the owner for restoring the original condition, damages are measured only by the difference between the value of the land before and after the harm." See Samson Construction Company, Inc. et al. v. Brusowankin, 1958, 218 Md. 458, 147 A.2d 430, 69 A.L.R.2d 1326; Hahn v. Hemenway, 1950, 96 N.H. 214, 72 A.2d 463.

Plaintiffs concede the foregoing to be the correct rule of damages in this case. They seek not only to recover the reasonable cost of cutting down destroyed trees, of removing their stumps and of trimming trees which were partially destroyed but, in addition, seek to recover an amount which they claim represents the fair value of the trees which were totally destroyed. They claim that said trees had a value separate from the land as ornamental or shade trees. In support of this claim their expert, one Leander B. Spencer, Jr., a nurseryman of many years' experience, estimated their value to have been $3,113.85, calculated according to the "Dr. E. Porter Felt's Formula", so-called, for the ascertainment of the value of ornamental or shade trees. While this formula appears to be generally accepted in cases where it is properly applicable, I do not think this case presents a proper situation for its application. Although plaintiffs, prior to May 18, 1957, had undoubtedly devoted a great deal of effort and time to clearing out scrub and undergrowth from a part of the damaged land, I am far from convinced that said area can be fairly regarded as having been a grove or park-like area where said trees had a separate value as ornamental or shade trees. On the contrary, the number of trees admittedly in the relatively small area directly involved convinces me that they were in a heavily wooded area and that they cannot be reasonably regarded as ornamental or shade trees. Moreover, if they were, and I think they were not, to be considered as ornamental or shade

trees the entire absence of any probative testimony as to the particular species of trees destroyed, the number of each species, their size, their condition immediately prior to said crash and other deficiencies in the evidence would not warrant me in giving any weight to this estimate of value. No claim is made and there was no evidence that said trees had any value as timber. In short, on the evidence I must and do conclude that said trees had no calculable value apart from the land on which they stood.

It is clear, however, that the plaintiffs will be obligated to incur substantial expense in attempting to replace, insofar as is practicable, their land in its original position. There was no evidence as to what it would cost to replace the destroyed trees with trees of like kind, size and development. Obviously it would be extremely expensive and unreasonable to attempt to do so. As the practicable and reasonable alternative, the plaintiffs are entitled to recover in addition to the reasonable cost of necessary repairs to their house and garage, the reasonable cost of clearing their land of the totally destroyed trees, of removing their stumps and of trimming the partially destroyed trees. While there is a decided conflict in the testimony as to the reasonable cost of performing this work, the credible testimony satisfies me beyond doubt that the reasonable cost of cutting down the destroyed trees and trimming the remainder which were partially damaged is $975, and that the reasonable cost of removing the stumps of the dead trees is $1,200. In this regard I reject the testimony of the defendant's expert that plaintiffs' land could be cleared of said destroyed and damaged trees and placed in a reasonably suitable condition for the sum of $500. In my opinion this amount would be grossly inadequate for the satisfactory performance of this task, and would fall far short of the reasonable cost thereof.

In conclusion, it is my considered judgment that the plaintiffs are entitled to an award of $995 as compensation for

necessary repairs to their house and garage, and of $2,175 for the harm to their land.

Accordingly, judgment shall be entered in favor of the plaintiffs in the sum of $3,170.