**349 A.2d 48.**

GUIDO TORTOLANO *et ux.* *vs.* ALBERT DIFILIPPO, JR.

DECEMBER 15, 1975.

PRESENT: Roberts, C. J., Paolino, Joslin, Kelleher and Doris, JJ.

PAOLINO, J. This is an appeal by the defendant from a judgment in a jury trial waived case in favor of the plaintiffs.

The plaintiffs are a husband and wife who own a parcel of land and dwelling house located on Horace Street in the city of Providence. The land is situated on a steep hillside which slopes upward from the back of the lot toward Boundary Avenue which runs parallel to Horace Street. The plaintiffs have resided at this location since approximately 1955.

The defendant owns property which extends from Horace Street to Boundary Avenue and which abuts plaintiffs' property on its southerly and westerly sides. The two parcels abut one another at a point where the grade is steep and plaintiffs have erected a retaining wall to maintain lateral support of defendant's Boundary Avenue lots. The defendant has owned his parcel since 1971.

In early 1971, defendant, in preparation for the construction of a dwelling house on the Boundary Avenue frontage of his property, commenced a filling operation adjacent to the 40-foot northerly boundary with plaintiffs' property. (See diagram attached as an appendix.) Large amounts of fill consisting of loose sand, dirt, clay, broken concrete, broken bituminous macadam and boulders were deposited on defendant's property with the net result of raising the level of his land 12 to 14 feet above the natural grade.

The trial exhibits show clearly that the natural grade of the land along the common boundary was quite steep and that the deposits of fill rendered the grade significantly more precipitous. In fact, it appears from one diagram that at a point where the two lots abut and where the original grade was approximately 4 feet, the level of defendant's lot is now 8 to 10 feet above the level of plaintiffs' lot. Overall, the filling operation has raised the level of defendant's Boundary Avenue lots 12 to 14 feet above their natural grade.

The plaintiffs alleged that this fill changed the natural flow of surface waters thereby causing rainwater to flow onto and be discharged upon their land. Their principal complaint however was that when the rainwaters came they brought with them quantities of the "* * * loose fill, muck, stones, and buckled and broke the small retaining wall which the plaintiff had placed on his own land." They commenced this action in the Superior Court demanding (1) that defendant be enjoined from permitting water to flow across his property in such a way that it carried debris onto plaintiffs' property; (2) that defendant be required to install and maintain a retaining wall for lateral support so as to contain defendant's fill; (3) and that defendant pay money damages equal to the amount necessary to restore the premises to their original condition.[1]

After a hearing on the merits the trial justice rendered a written decision. Insofar as pertinent here he found that the dumping of fill onto defendant's lot directly resulted in large deposits of uncompacted earth sliding onto

---

[1]The defendant filed a third-party complaint against the city of Providence and the A. E. Bragger Construction Co., Inc., a contractor for the city. Bragger filed a compulsory counterclaim under the third-party action. Both the third-party complaint and the counter-claim were dismissed by the trial justice in his decision on the primary cause of action. None of the parties to the third-party action appealed.

plaintiffs' land causing considerable damage to the land-scaping, walls, patio, etc.; that defendant was negligent in his failure to compact the loose fill used to raise the level of his land and in having permitted the siltation of this fill onto plaintiffs' property below, which, until corrected, would continue; and that the siltation of this fill onto plaintiffs' property directly resulted in considerable damage to the landscaping, walls, patio, etc., of plaintiff's property.

He held that defendant had an affirmative duty to prevent dirt on his land from sliding down onto plaintiffs' adjoining lot when it was defendant who created the situation by importing substantial amounts of dirt to elevate his property above the natural grade.

Accordingly he granted plaintiffs a mandatory injunction, requiring defendant to take affirmative action to stabilize the fill to prevent further siltation onto plaintiffs' property. He suggested alternative methods to accomplish this, but mandated that whatever plan was adopted, the fill should be compacted to insure stabilization. He also ordered that defendant was to bear all costs of rolling the fill and constructing any additional retaining walls. He gave defendant 60 days from entry of judgment within which to carry out the court's orders.

The trial justice found that the damages resulting from defendant's negligence amounted to $5,675. This figure consisted of the sum of $4,675 estimated by the expert witnesses presented by plaintiffs to be the cost of repairing the damage in 1972 and $1,000 estimated by the trial justice to be the amount necessary to equalize the increase in present-day costs. He held that defendant was responsible for this amount to repair and restore plaintiffs' property to the condition that existed prior to defendant's action. Judgment was entered and defendant appealed.

# I

Under point I of his brief defendant posits the question whether Rhode Island follows the so-called "common enemy" doctrine regarding surface waters.[2] On this record this issue is not before us. Although the complaint alleges that the damage complained of was caused by surface waters as well as by mud, sand, dirt, rocks, stones and debris, the uncontradicted evidence is that the damage to plaintiffs' property was caused by the deposits of silt, dirt and debris. In fact plaintiff testified that he was not complaining of excess water running onto his property. Rather, he testified that the silt and dirt had done all the damage to his property. This was corroborated by the testimony of plaintiffs' expert witness, Mr. Gordon Archibald, a professional engineer, who testified that plaintiffs' problem was not one of water, but that the heavy rain would beat down on the fluff material and it would wash away onto plaintiffs' land. The facts in this case are akin to those in *Fabbri* v. *Regis Forcier, Inc.,* 114 R. I. 207, 330 A.2d 807 (1975), where this court upheld a trial justice's decision to award damages and a mandatory injunction to the plaintiff whose property was inundated by loose stones washed thereon as a result of the defendant's negligent landscaping of a neighboring lot. *Id.* at 208, 211, 330 A.2d at 808, 810. In short, the case at bar does not, as defendant intimates, concern plaintiffs' complaint of surface water damage but concerns their complaint that loose fill has found its way onto their property as a direct result of defendant's actions. Thus, the case law of this jurisdiction regarding liability for altering the flow of surface waters is inapposite to the present litigation.

---

[2] We answered the question only this year in *Butler* v. *Bruno,* 115 R. I. 264, 341 A.2d 735 (1975), where a majority of this court held that the rule of reasonable use would be adopted to determine a person's responsibility for use of surface waters flowing across his land.

## II

Under point II defendant asks the question "[w]hether the judgment of the trial court should be reversed under said doctrine," meaning, of course, the "common enemy" doctrine regarding surface waters. In view of our conclusion under point I that this is not a surface water case, we answer this question in the negative.

## III

The defendant's next inquiry is "[w]hether the trial court erred in denying defendant's motion to dismiss." A search of the record reveals no motion to dismiss attributable to defendant and the brief offers no enlightenment as to the contents or whereabouts of said motion. We therefore do not treat any of the points raised under this segment of defendant's brief.

## IV

The defendant next contends that the trial justice erred in granting plaintiffs a mandatory injunction. We do not agree.

A landowner who alters the grade of his land has an affirmative duty not to permit his land to remain in that altered state if the result of such a condition is damage to the adjoining property. 1 Am. Jur.2d, *Adjoining Landowners* §27 (1962). An owner who alters the grade of his land to a level above his neighbor's land is under a duty to keep the fill used from falling or sliding onto the adjoining parcel. To enforce this duty a court may require such landowner to build a retaining wall entirely on his own property to keep the soil within the boundaries of his lot. *Sime* v. *Jensen*, 213 Minn. 476, 480-81, 7 N.W.2d 325, 327 (1942). The underlying rationale of this rule is that a landowner who fills his lot above the level of the lot of an adjoining landowner has no right to lateral support from the latter and the latter cannot be compelled

to contribute to the cost of a retaining wall. *Id.* at 481, 7 N.W.2d at 328. The issuance of a mandatory injunction toward this end was a measure we endorsed in the case of *Fabbri* v. *Regis Forcier, Inc., supra* at 207-08, 211, 330 A.2d at 808, 810, wherein we affirmed a Superior Court order directing the defendant to erect a retaining wall.

The trial justice found that the dumping of fill onto defendant's land directly resulted in large deposits of uncompacted earth sliding onto plaintiffs' land and causing considerable damage. He also found, regarding the necessity of injunctive relief, that this siltation of the fill onto plaintiffs' land would continue until corrected. These findings are supported by the evidence and, since defendant has failed to show that they are clearly wrong or that the trial justice overlooked or misconceived material evidence in making such findings, they will not be disturbed by this court. *Fabbri* v. *Regis Forcier, Inc., supra* at 210, 330 A.2d at 809-10.

## V

On the issue of damages to which plaintiffs may be entitled, defendant objects to the award of $5,675 on two grounds; first, he claims that the trial justice employed the wrong measure of damages. The basic measure of damages to realty, he claims, is the diminution in value or difference between market value immediately before the loss and that immediately after. Second, he alleges error in the trial justice's inclusion of $1,000 in the award to account for the effects that inflation has had on money values since the time of the damages in 1972.

Regarding defendant's first contention, for the purpose of computing damages, the law makes a general distinction between permanent damage to realty on the one hand and temporary or repairable damage on the other. Although there might be a case where factors such as the value of the property or the use to which it is put might

render the cost of repair an unreasonably high measure of recovery, the general rule is that where the damage is temporary the cost of repair measure is proper and where the damage is permanent, the diminution in value measure is more appropriate. *Bean* v. *Sears, Roebuck & Co.,* 129 Vt. 278, 282, 276 A.2d 613, 616 (1971). This is the rule set forth in Restatement, *Torts* §929 (1939), comment *b* and followed in *Norden* v. *United States,* 187 F.Supp. 594, 595-96 (D. R. I. 1960). One authority, anticipating situations like the one presently before us, has stated that "the cost of repair measure * * * is an especially appropriate measure where debris or obstructions have been deposited upon the land and can be removed." Dobbs, *Remedies* §5.1 at 313 (1973).

The defendant has not alleged that the cost of repair measure would be unreasonable or that plaintiff would somehow profit from an award of this magnitude. We cannot, therefore, fault the trial justice for finding that the cost of restoring plaintiffs' property to its former condition was an appropriate measure of damages. We agree with the authorities cited above and hold that, in these circumstances, the reasonable cost of repairing plaintiffs' property is an appropriate measure of plaintiffs' recovery.

Finally, it is proper to base such an award on an estimated cost of repair if such opinion is expressed by a qualified expert. 22 Am. Jur.2d, *Damages* §335 (1965). In the case at bar, such testimony was presented by plaintiffs' expert, Arnaldo Abatecola, who testified that he had viewed the damage and given a written estimate of $4,675 on October 27, 1972.

The trial justice based his award of $5,675 on a combination of two elements: (1) uncontradicted evidence that the cost of repair in 1972 was estimated to be $4,675; and (2) Mr. Abatecola's testimony that to do the same work

in February 1974, accounting for inflation and the fact that he would be paying his men more money, his bid for the job would be $1,000 more than in 1972. In effect, therefore, the trial justice, in awarding the full $5,675, measured plaintiffs' recovery by the cost of repair as of the date of judgment and not as of the date of injury. The defendant's contention here is that the additional award of $1,000 to account for inflation was improper.

The parties have cited no authorities on this specific point but we believe the better rule is to assess plaintiffs' damages as of the date of the occurrence of the injury. *See Kuniansky* v. *D. H. Overmyer Warehouse Co.*, 406 F.2d 818, 822 (5th Cir. 1968); *Frye* v. *Pennsylvania R.R.*, 187 Pa. Super. 367, 369-70, 144 A.2d 475, 477 (1958). Accordingly, we hold that plaintiffs are entitled to damages in an amount equal to the cost of restoring their property and that cost is computed as of the date of the damage. We further hold that the trial justice erred in adding the sum of $1,000 to account for the inflationary trends in the costs of restoring plaintiffs' land.

The judgment appealed from is affirmed as to the award of $4,675 and reversed as to the sum of $1,000. The papers are remanded to the Superior Court for entry of a new judgment in accordance with this opinion.

## APPENDIX

TORTOLANO (Plaintiff): LOT 514 *
DiFILIPPO (Defendant): LOTS 516, 517, 530, 531 *
▨▨▨▨▨▨ : FILLED-IN AREA

*All lots in Providence Tax Assessor's Plat 115. (not to scale)

*Morriss & Vacca, James R. Morriss, Anthony Vacca,* for plaintiffs.

*Stephen E. Cicilline, Anthony DeSimone,* for defendant.