SOPHIE F. BRONOWISKI MULLI-
GAN IRREVOCABLE TRUST

v.

Todd Arthur BRIDGES.

No. 2011–20–Appeal.

Supreme Court of Rhode Island.

April 10, 2012.

Ronald A. Dwight, Esq.

Todd Arthur Bridges, Pro Se.

Present: SUTTELL, C.J.,
GOLDBERG, FLAHERTY, ROBINSON,
and INDEGLIA, JJ.

### OPINION

Justice FLAHERTY, for the Court.

"Either this wallpaper goes, or I do."[1] The plaintiff, the Sophie F. Bronowiski Mulligan Irrevocable Trust, appeals from a Superior Court judgment in its favor for $1,600, plus interest, in an action for breach of a residential lease agreement. The plaintiff's complaint alleged that the defendant, Todd Arthur Bridges, a Brown University graduate student, breached his lease agreement by painting over expensive historical wallpaper inside the plaintiff's nineteenth century building on Benefit Street in Providence and by failing to pay the last month's rent. The trust's complaint sought $1,600 in unpaid rent, $25,000 for repairs to the property, punitive damages, costs, and attorneys' fees. After a bench trial in Providence County Superior Court, the trial justice found that the defendant breached the lease by painting portions of the premises, but she also ruled that the plaintiff had failed to prove by a preponderance of the evidence that the trust had incurred damages that exceeded the amount of unpaid rent. The plaintiff timely appealed from that judgment, alleging three errors: (1) that the trial justice improperly forced Ronald A. Dwight, attorney and cotrustee for the trust, to withdraw from representation; (2) that the trial justice erred in her determination of damages; and (3) that the trial justice should have awarded attorneys' fees in accordance with the lease agreement.

On February 9, 2012, plaintiff appeared before the Court for oral argument based on an order directing the parties to show cause why the issues raised by plaintiff's appeal should not be decided summarily without further briefing or argument.[2] After considering the record, the memoranda submitted by the parties, and the arguments advanced by each, we are of the opinion that cause has not been shown and that the appeal should be decided at this time. For the reasons set forth in this opinion, we affirm in part and vacate in part the judgment of the Superior Court,

---

1. These are reputed to have been the dying words of Irish playwright, poet, and essayist Oscar Wilde.

2. The *pro se* defendant was defaulted for failing to file a Rule 12A statement in accordance with Article I, Rule 18A of the Supreme Court Rules of Appellate Procedure. The defendant did not appear at oral argument, and he has submitted no written arguments or communications of any kind to this Court. Thus, according to the Rules of Appellate Procedure, the Court shall proceed to decide this matter without argument or briefing from defendant.

and remand for further proceedings not inconsistent with this opinion.

## I

### Facts & Travel

The plaintiff is the owner of a historic home located at 151 Benefit Street in Providence.[3] Built in 1862, this property is listed on the United States Department of the Interior's Register of Historic Places and is part of the College Hill Historic District. The home was constructed in the Italianate style, and over the years its owners have restored and carefully preserved it. The defendant signed a lease agreement on September 3, 2004, for the second, third, and fourth floors of the house. Paragraph 21 of the agreement explained in detail the historic nature of the home and defendant's liability for any damage done to the property. It stated:

"21. **Historic property.** Tenant acknowledges that the rented premises is a unique historically significant house which has been carefully and meticulously restored with the advice of historical experts on Victorian and 18th century design. Should any part of the decorated surfaces of the house, including the woodwork or plaster work, be chipped or any wallpaper be torn or marked for any reason other than aging or settling or a casualty of which the Tenant has not been a proximate cause, Tenant agrees to restore the same to the same condition as when the premises were received. Tenant acknowledges that all colors are custom mixed and must be exactly matched to the present color scheme. If exact matching is not possible, this may involve repainting or wallpapering large areas to obtain visual integrity. Removal of all finger marks and restoration of the woodwork and wallpaper to the condition at the beginning of the lease term will be the Tenant's financial responsibility at the end of the lease term. If Landlord must restore the premises after Tenant's surrender of possession, Tenant will be liable for the expense and acknowledges that special restorers and experts in painting may be required at more than normal expense to perform such work. * * * If Tenant wishes to paint any room, tenant will obtain first obtain [sic] permission and then Landlord as to color and finish [sic] and Landlord will supply all materials. Painting must be down [sic] to landlord's specifications."

In addition, paragraph 15 set forth provisions with respect to liability if legal action was initiated to enforce the provisions of the agreement:

"15. **Legal action to enforce lease.** Should any legal action be required by the Landlord to enforce **any** of the obligations of this lease or to obtain compensation for any damage to the property under an action separate from the lease, Tenant agrees to pay reasonable attorney's [sic] fees and costs should any court of competent jurisdiction render a judgment in Landlord's favor to collect for unpaid rent, damages to the property of any kind, to obtain possession of the premises, or to obtain an injunction against improper use of the property or behavior thereon, or an order to obtain compliance with any provision of the lease."

On September 5, 2006, after defendant had vacated the premises, plaintiff filed a complaint alleging that defendant had

---

**3.** Before this suit was filed, plaintiff was only a three-quarter owner of the property; Sophie Mulligan's widower owned the remaining interest. During the pendency of the suit, plaintiff acquired that interest and became the sole owner of the property.

painted parts of the house without first securing permission and in apparent breach of the express terms of the lease. The defendant filed an answer, alleging that the painting was necessary to repair smoke damage at the property. In his answer, defendant also suggested that he and plaintiff agreed to apply his security deposit toward the last month's rent. On July 21, 2010, a trial was held before a justice of the Superior Court, sitting without a jury. The plaintiff was represented by counsel; defendant represented himself. The plaintiff's first witness was Ronald Dwight, who testified about the nature of the property and the damage he alleged was caused by defendant.[4] In sum, he testified that defendant defaced five areas of the property by painting them in violation of the terms of the lease: (1) he changed the color of one of the stairs in the four-story stairwell from grey to brown; (2) he painted over a portion of the wallpaper in a third-floor bathroom; (3) a hallway on the third floor, which was adjacent to the main stairwell and which shared the same wallpaper, had been painted beige; (4) he painted a third-floor bedroom blue; (5) and he painted a second third-floor bedroom a cream color. Additionally, Mr. Dwight testified that droplets of paint had been sprayed onto the recently refinished wood floors in many of these areas.

Next, plaintiff called Tiffany Adams to testify as "an expert on wallpaper preparation work and [the] hanging of wallpaper." Ms. Adams testified that she was familiar with 151 Benefit Street, and that she had been retained by Mr. Dwight to estimate the cost of repairing the damage allegedly caused by defendant. Ms. Adams testified with great specificity about the process for removing and hanging very expensive wallpaper, the costs associated with acquiring new, historically accurate replacement paper for the house, and the labor charges for working in such a large and challenging space. She also testified that, in her opinion, the overall appearance of the hallway and stairwell "absolutely" would be affected if only the wall that defendant painted was re-wallpapered, and not the entire space, because the pattern would be exceedingly difficult to match. During cross-examination, however, Ms. Adams acknowledged that a wooden border separates the hallway that defendant painted from the stairwell walls. She estimated that it would take twelve to fourteen rolls of paper to wallpaper the hallway, and she opined about the cost of the paper.

The plaintiff also called defendant as an adverse witness. The defendant conceded that he painted a portion of the third-floor bathroom, the stair tread, and the hallway adjacent to the stairwell without permission from plaintiff. After defendant testified, plaintiff rested. The defendant then testified on his own behalf in narrative form, stating that he accepted fault for painting certain areas, and that he did not pay his last month's rent. After the close of the evidence, defendant apologized for painting parts of the house without permission and said that he was open to "any reasonable attempt at solving the problem." Nonetheless, he argued that he should not be held responsible for the cost of re-wallpapering the entire stairwell. In response, plaintiff reiterated that re-wallpapering the stairwell was the primary issue in the dispute. In short, plaintiff acknowledged that it was an unusually expensive repair, but argued that a proper restoration required wallpapering the en-

---

**4.** The trial justice allowed Dwight to testify as a witness only after he withdrew as counsel for plaintiff.

tire area and not merely the wrongfully painted hallway.

After considering the evidence and the arguments of the parties, the trial justice delivered a bench decision. She found that the lease was "clear and unambiguous" and that the lessee was "forbidden to paint without the express permission of the landlord." Furthermore, she found that defendant admitted that he breached the lease when he painted over the wallpaper in the hallway and the bathroom without permission, and that the only genuine dispute was over damages. However, the trial justice concluded that plaintiff failed to meet its burden of proving by a preponderance of the evidence that "the painting of the affected areas has so materially affected the aesthetics and overall presentation of the property" that defendant should be saddled with the cost of re-wallpapering the entire stairwell in addition to the hallway. She stated that she was "not persuaded that the plaintiff has been harmed to the extent of over $20,000" and that she "would have liked to have been able to award a different amount, perhaps a lesser amount, but the evidence is such that [she] would only be speculating if [she] were to arbitrarily pick a different dollar amount of compensation." In the end, the trial justice awarded plaintiff $1,600 plus interest, representing one month of unpaid rent.

## II

### Standard of Review

"[T]he standard of review of a trial justice's findings on damages is quite deferential." *Riley v. St. Germain,* 723 A.2d 1120, 1122 (R.I.1999) (citing *Kottis v. Cerilli,* 612 A.2d 661, 668 (R.I.1992)). "[I]t is well settled that a court may award damages for breach of contract to place the injured party in as good a position as if the parties fully performed the contract." *Id.* (citing *Wells v. Uvex Winter Optical, Inc.,* 635 A.2d 1188, 1193 (R.I.1994)). "The amount of damages sustained from a breach of contract must be proven with a reasonable degree of certainty, and the plaintiff must establish reasonably precise figures and cannot rely upon speculation." *Sea Fare's American Cafe, Inc. v. Brick Market Place Associates,* 787 A.2d 472, 478 (R.I.2001) (quoting *National Chain Co. v. Campbell,* 487 A.2d 132, 134–35 (R.I.1985)). "However, '[p]laintiffs will not be denied recovery merely because the damages * * * are difficult to ascertain, as long as they prove damages with reasonable certainty.'" *Id.* (quoting *National Chain Co.,* 487 A.2d at 135). With respect to plaintiff's argument for attorneys' fees, we review the trial justice's ruling for an abuse of discretion. *See Napier v. Epoch Corp.,* 971 A.2d 594, 598 (R.I.2009) (citing *Bitgood v. Allstate Insurance Co.,* 481 A.2d 1001, 1008 (R.I.1984)).

## III

### Analysis

We begin by addressing plaintiff's argument that the trial justice erred in determining the amount of damages caused by the improper painting of the walls.[5] Ms. Adams, plaintiff's expert witness, testified with great specificity about the cost of re-wallpapering the grand foyer, stairwell, and hallway of 151 Benefit Street. Based on her measurements of the space, she testified that approximately seventy-two rolls of liner paper and seventy-two rolls of wallpaper would be required to restore the

5. The plaintiff's argument that the trial justice should have allowed Mr. Dwight to testify while also acting as co-counsel is moot. In addition, plaintiff represented to the Court at oral argument that he was no longer pursuing this argument.

stairwell to its previous condition.[6] She further testified that twelve to fourteen rolls would be necessary to restore the third-floor hallway. She testified that, in her opinion and based upon her knowledge and experience, Mr. Dwight had selected a "compatible" type of replacement wallpaper and that a reasonable cost would be between $50 and $200 per roll. However, after reviewing the testimony, the trial justice found that the evidence did not permit her to conclude "that the damage to the smaller area has such a material impact on the overall presentation or aesthetics of the interior of the building that it has diminished the value of the property by any particular amount." She stated further that she "would have liked to have been able to award a different amount, perhaps a lesser amount, but the evidence is such that I would only be speculating if I were to arbitrarily pick a different dollar amount of compensation." Nonetheless, the trial justice accepted that defendant had failed to pay his last month's rent, and accordingly awarded plaintiff $1,600, plus interest.

 It is a fundamental principle of contract law, and the settled law of this state, that "clear and unambiguous language set out in a contract is controlling in regard to the intent of the parties to such contract and governs the legal consequences of its provisions." *Elias v. Youngken*, 493 A.2d 158, 163 (R.I.1985). Additionally, we held in *Tortolano v. DiFilippo*, 115 R.I. 496, 349 A.2d 48 (1975), that "[a]lthough there might be a case where factors such as the value of the property or the use to which it is put might render the cost of repair an unreasonably high measure of recovery, the general rule is that where the damage is temporary the cost of repair measure is proper and where the

damage is permanent, the diminution in value measure is more appropriate." *Id.* at 502–03, 349 A.2d at 52 (citing *Bean v. Sears, Roebuck & Co.*, 129 Vt. 278, 276 A.2d 613, 616 (1971)). Here, the historic property provision of the lease agreement states:

> "Should any part of the decorated surfaces of the house, including the woodwork or plaster work, be chipped or any wallpaper be torn or marked for any reason other than aging or settling or a casualty of which the Tenant has not been a proximate cause, *Tenant agrees to restore the same to the same condition as when the premises were received.* Tenant acknowledges that all colors are custom mixed and must be exactly matched to the present color scheme. *If exact matching is not possible, this may involve repainting or wallpapering large areas to obtain visual integrity."* (emphasis added.)

The trial justice found that the lease was "unambiguous" and that defendant caused the damage to the wallpaper. Ms. Adams testified that "visual integrity" would be compromised if the entire stairwell was not re-wallpapered, and she also testified with reasonable specificity about the cost for repairing the damage. In light of these facts, and despite the deference accorded to the trial justice's findings, we hold that the trial justice erred when she determined damages because she appears to have applied the "diminution of value" standard rather than the "cost of repair" standard, which was amply supported by Ms. Adams' testimony.

Although not referred to by the trial justice in her decision, plaintiff presented no evidence about the cost of repairing and restoring the improperly painted stair

---

6. Ms. Adams also testified that there was extra wallpaper available to repair the third-floor bathroom, but that it would cost approximately $250 to install it.

tread, the two third-floor bedrooms, or the woodwork that defendant allegedly splattered with paint. Consequently, the trial justice did not err by not awarding damages for these claims of damage to the property.

We reach a similar conclusion with respect to the plaintiff's argument that the trial justice erred when she failed to award attorneys' fees. "This Court adheres to the 'American rule' that litigants are generally responsible for their own attorneys' fees and costs." *See Napier*, 971 A.2d at 598 n. 4 (citing *Moore v. Ballard*, 914 A.2d 487, 489 (R.I.2007)). Even under that standard, however, "attorneys' fees may be appropriately awarded, at the discretion of the trial justice, given proper contractual or statutory authorization." *Id.* (citing *Moore*, 914 A.2d at 489). We agree with the plaintiff that the lease is clear and unambiguous and that the defendant agreed "to pay reasonable attorney's [*sic*] fees and costs" if legal action was required to "obtain compensation for any damage to the property." "[U]nder established contract law principles, when there is an unambiguous contract and no proof of duress or the like, the terms of the contract are to be applied as written." *Rodrigues v. DePasquale Building and Realty Co.*, 926 A.2d 616, 624 (R.I.2007) (quoting *Gorman v. Gorman*, 883 A.2d 732, 739 n. 11 (R.I.2005)). Therefore, we hold that the clear language of the lease agreement provided contractual authorization for the award of attorneys' fees, and that the trial justice abused her discretion in failing to do so.

## IV

### Conclusion

For the foregoing reasons, the judgment of the Superior Court is affirmed in part and vacated in part. We affirm the trial justice's award of $1,600, plus interest, representing one month of unpaid rent. We vacate the judgment with respect to that portion of the trial justice's decision declining to award damages for the repair of the plaintiff's property and for her failure to award attorneys' fees. This matter is remanded to the Superior Court for a hearing on those two issues.