**Supreme Court**

No. 2011-384-Appeal.
(NC 08-236)

Donna Banville          :

    v.                   :

Peter Brennan et al.     :

NOTICE: This opinion is subject to formal revision before publication in the Rhode Island Reporter. Readers are requested to notify the Opinion Analyst, Supreme Court of Rhode Island, 250 Benefit Street, Providence, Rhode Island 02903, at Telephone 222-3258 of any typographical or other formal errors in order that corrections may be made before the opinion is published.

Donna Banville                     :

v.                                  :

Peter Brennan et al.               :

Present:  Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ.

## O P I N I O N

**Justice Indeglia, for the Court.**  The defendants, Peter and Joyce Brennan, appeal from

a judgment entered by the Superior Court in favor of the plaintiff, Donna Banville, in this

boundary dispute between neighbors.  On appeal, the Brennans argue that the trial justice erred

in finding that the doctrine of acquiescence applied to establish the dividing line between the two

lots.  The Brennans also argue that the trial justice erred in awarding damages to Banville based

on the diminution in the fair market value of her real property as a result of the alleged

encroachment by the Brennans.  After a thorough review of the record and consideration of the

parties' written submissions and oral arguments, we affirm the judgment of the Superior Court.

### I

### Facts and Travel

The plaintiff, Donna Banville, owns real estate at 1692 Eagleville Road in Tiverton,

Rhode Island, which is designated as Block 108, Card 47C on the Tiverton Tax Assessor's map.

Banville has resided on the property since 1984 when the lot was created by the subdivision of a

larger lot. This larger lot was then owned by John and Monika Ferreira, who intended to divide it into two lots of approximately equal size.[1]

The other lot created out of the subdivision of the larger one is designated as Block 108, Card 47E on the Tiverton Tax Assessor's map and has the address of 1710 Eagleville Road. This lot currently belongs to the Brennans. In 1984, the owner of the so-called Brennan lot was Peter Edes. Edes placed a trailer and constructed a shed on the lot, both of which appeared to respect the town plat map boundaries as the boundary between the Banville lot and the Brennan lot. In 2003, Edes transferred the lot to Kevin and Gail Goncalo. The Goncalos transferred the lot to the Brennans on November 7, 2006.

At trial, Banville testified that, from 1984 on, she observed the Town plat map boundaries with respect to ownership and maintenance of her property, which was roughly demarcated on the easterly side by a row of trees. Banville further testified that in 2005 she put up an electric fence that largely ran along the line of trees in order to keep her horses contained.

The instant dispute between the Brennans and Banville began on January 5, 2007, when Peter Brennan introduced himself to Banville as the new owner of the neighboring property and informed her that he was going to get his lot surveyed in order to construct a building on it. On January 8, 2007, Mr. Brennan informed Banville that his surveyor had encountered some problems because of the electric fence. Banville agreed to turn off the electricity while the Brennans' surveyor was working. The Brennans' surveyor, Mr. Steven Murgo, proceeded to conduct a survey of the two lots (the Murgo survey). On January 12, 2007, Banville returned home to find survey markers running through her front yard, a portion of her trailer, her pool, her backyard, and into her horse corral. There was also spray paint running along her trailer's

---

[1] The record indicates that they believed that the larger lot contained approximately seven acres; the lot, in fact, only contained around three and a half acres.

foundation, indicating that, according to the Murgo survey, part of her trailer and her horse corral were on the Brennan lot.

On January 14, 2007, Mr. Brennan, relying on the Murgo survey, informed Banville that her trailer was partially encroaching on his property and preventing him from constructing his building. Banville told Mr. Brennan that she disagreed with this survey and that she wanted to hire her own surveyor in order to determine the boundaries.

On January 16, 2007, Mr. Brennan applied for a building permit from the Tiverton building inspector to construct a foundation on his lot.

On January 18, 2007, Banville returned home to find that her electric fence had been moved to be consistent with the Murgo survey stakes, thus trapping her horses into a small area. Banville called the Tiverton Police Department, which came to the scene and submitted an incident report. The police contacted Mr. Brennan and informed him that he could not move Banville's property without her express permission as to whether and where her property might be moved. Mr. Brennan apologized to Banville, and Banville again informed Mr. Brennan that she wanted to have her own survey conducted to determine the boundary line.[2]

Mr. Brennan and Banville had further conversations concerning the boundary line, with Mr. Brennan telling Banville that he "wanted to be a good neighbor," but that he needed to get his building constructed. Sometime on or around January 26, 2007, Banville consented to move her trailer and her dog kennel so that they were no longer over the Murgo survey line. At some point thereafter, Mr. Brennan had a row of large boulders placed along the Murgo-surveyed boundary between the two lots.

---

[2] At trial, Mr. Brennan averred that he did not recall being told at that time that Banville would be having her own survey conducted.

Banville hired Donald J. Medeiros, a registered land surveyor, to survey the properties. On January 31, 2007, Banville sent a certified letter to the Tiverton building inspector and to the Brennans, informing them that she had hired Mr. Medeiros to survey the land. Mr. Brennan testified, however, that he never received the letter.[3] On February 8, 2007, Mr. Medeiros first visited the properties to conduct his survey (the Medeiros survey). At that time, he informed Mr. Brennan that he had been hired by Banville to survey the two lots and determine the disputed boundary line. The Medeiros survey ultimately concluded that the boundary line between the two lots was located, in part, approximately in line with the row of trees which Banville had previously observed as the boundary. Significantly, however, while the Brennans' building does not extend past the row of trees, it does extend beyond the boundary line established by the Medeiros survey by an estimated thirteen feet at one corner.

On March 9, 2007, Mr. Brennan applied for a building permit for a steel commercial building to house his equipment for his excavating business.[4] The Tiverton building inspector issued a certificate of use and occupancy for the building on the Brennan lot on November 14, 2007.

Banville filed the instant suit on May 1, 2008, seeking declaratory and injunctive relief.[5] A nonjury trial was held in the Newport County Superior Court on April 25, 26, and 27, 2011.

At trial, two of Banville's longtime neighbors testified on her behalf. They corroborated Banville's testimony that she had treated the row of trees as the boundary line of her property. They further testified that they both informed Mr. Brennan that his proposed construction was

---

[3] The letter was designated as "Not Deliverable As Addressed" and marked "Return to Sender" by the post office.

[4] The property is zoned commercial. Banville's home—her trailer—is a prior nonconforming use.

[5] Banville thereafter amended her complaint to assert claims that she owned the land up to the Medeiros survey line by means of adverse possession and the doctrine of acquiescence.

encroaching on what they believed to be the Banville lot. They asserted that Mr. Brennan informed them that he planned to proceed with construction anyway and that he believed the Murgo survey was correct. Mr. Brennan disputed this testimony.

Mr. Medeiros also testified at trial, explaining at some length the process by which he had conducted his survey and arrived at his conclusion concerning the location of the boundary line. He testified that each of the two lots—the Banville lot and the Brennan lot—were approximately one-and-one-half acres in area. Mr. Medeiros testified that he spoke to Monika Ferreira, one of the original owners, who told him that the original surveyor had placed survey stakes along the dividing line between the two lots at the time of the subdivision.

Nathan Godfrey, a real-estate appraisal expert, testified as an expert witness for plaintiff as to the fair market value of the Banville lot before the encroachment of the Brennan building and the diminution in value to the lot as a result of the encroachment. He asserted that the encroachment would result in an approximately 15 percent depreciation in value, resulting in a loss of $30,000.

Richard Lipsitz, a licensed surveyor, testified as an expert witness for defendants. He agreed with the Medeiros survey as to the perimeter property lines of the entire parcel. He disagreed, however, with the Medeiros survey as to the location of the boundary line between the two lots. According to Mr. Lipsitz, the Medeiros survey failed to give the proper weight to the existing "monuments" on the land in order to locate the boundary line and also did not follow the original subdivision plan. Lipsitz asserted that he believed the correct boundary line should end with Mr. Brennan's building being entirely on the Brennan lot and the corner of Banville's trailer encroaching onto the Brennan lot.

The trial also included a viewing of the properties. The trial justice issued a bench decision on September 22, 2011. The trial justice made extensive findings of fact, determining that he found the testimony of Banville's neighbors to be credible with regard to Banville's continued use of her property up to the row of trees, approximately where the Medeiros survey placed the boundary. He concluded that Mr. Medeiros had conducted a thorough survey with extensive research into the record titles of the properties before arriving at his conclusions. Accordingly, the trial justice found that the Medeiros survey was correct in the placement of the boundary line. He did not accept Mr. Lipsitz's testimony as to the location of the boundary line, noting that Mr. Lipsitz's conclusions "conveniently result[ed] in a boundary line between the two properties with Mr. Brennan's building being located entirely on his property * * *." The trial justice also stated that the Murgo survey was incorrect as to the location of the boundary line, commenting that it was "unfortunate[]" for the Brennans that they had relied on it, despite the warnings from Banville and other longtime residents of the neighborhood. The trial justice further found that Banville had testified credibly as to how the Brennans' encroachment on her property had adversely affected her use and enjoyment of her property. He concluded that "Ms. Banville has proved by a preponderance of the credible evidence that the Medeiros survey is accurate and that she has record title, clear title to her lot as established, and the boundaries of that lot as established, by the Medeiros survey."

The trial justice went on to address Banville's adverse possession and acquiescence claims. The trial justice found that Banville had openly and notoriously occupied the disputed area of land from 1984 to 2007, in excess of the statutory period required for adverse possession. He also concluded that the boundary line between the two lots had been established by the doctrine of acquiescence as a result of the row of trees having been respected as the boundary

line between the two lots by plaintiff and by both predecessors in title to the Brennans. Accordingly, the trial justice granted injunctive relief to plaintiff, permanently enjoining the Brennans from trespassing on the Banville lot and ordering the removal of the boulders and the portion of the Brennans' building that encroached on the Banville lot.[6] He also awarded damages to Banville in the amount of $30,000 as the amount of the diminution in the fair market value of the Banville lot as a result of the encroachment.

Judgment was entered for plaintiff on October 21, 2011. The defendants timely filed a notice of appeal to this Court. The defendants filed a motion for a stay in the Superior Court, which was denied, after a hearing, on December 1, 2011.

Additional facts will be provided as necessary to discuss the issues raised on appeal.

## II

### Standard of Review

Our review of a trial justice's decision following a nonjury trial is deferential. See Cigarrilha v. City of Providence, 64 A.3d 1208, 1212 (R.I. 2013). Accordingly, we

> "give[] great weight to the factual findings of a trial justice sitting without a jury in a civil matter, and we will not disturb such findings unless they are clearly erroneous or unless the trial justice misconceived or overlooked material evidence or unless the decision fails to do substantial justice between the parties." D'Ellena v. Town of East Greenwich, 21 A.3d 389, 391 (R.I. 2011) (quoting Costa v. Silva, 996 A.2d 607, 611 (R.I. 2010)).

Moreover, we

> "accord a substantial amount of deference to [the trial justice's credibility] determinations, due to the fact that [he or she] has actually observed the human drama that is part and parcel of every trial and * * * has had an opportunity to

---

[6] During the pendency of this appeal, defendants removed the boulders from plaintiff's property. Accordingly, the building is the only alleged encroachment onto plaintiff's land that remains for this appeal. This Court granted defendants a stay of the injunction to remove the building from plaintiff's land while this appeal was pending, on the condition that defendants post a $50,000 bond.

appraise witness demeanor and to take into account other realities that cannot be grasped from a reading of a cold record." Id. at 392 (quoting B.S. International Ltd. v. JMAM, LLC, 13 A.3d 1057, 1062 (R.I. 2011)).

This Court will also apply "a deferential standard of review to the trial justice's 'resolution of mixed questions of law and fact, as well as the inferences and conclusions drawn from the testimony and evidence * * *.'" Nye v. Brousseau, 992 A.2d 1002, 1008 (R.I. 2010) (quoting Houde v. State, 973 A.2d 493, 498 (R.I. 2009)).

## III

## Discussion

## A

## The Trial Justice's Determination of the Location of the Boundary Line

On appeal, defendants argue that the trial justice incorrectly applied the doctrine of acquiescence to establish the boundary line according to the Medeiros survey. According to defendants, the doctrine of acquiescence mandates that the tree line mark the boundary between the properties and that the Brennans' building is not encroaching on the Banville lot because it does not extend beyond the tree line.

We begin by noting that we are satisfied that the trial justice's conclusions with regard to the doctrine of acquiescence were essentially dicta and unnecessary to support judgment for plaintiff in this matter. The trial justice had previously found that plaintiff had proved that the Medeiros survey line constituted the actual boundary between the two lots; he addressed the theories of adverse possession and acquiescence only as alternative grounds for his decision. The trial justice was entitled to conclude from the evidence established at trial the location of the boundary line. On reviewing the record, we are convinced that the trial justice neither

overlooked nor misconceived any material evidence in reaching his conclusion. Accordingly, we cannot disturb his decision on appeal.

To the extent that defendants argue that the "tree line" boundary established by the doctrine of acquiescence trumps the Medeiros survey line which the trial justice found to be the actual boundary, however, we will address defendants' argument. The doctrine of acquiescence permits a claimant to "gain title to a defendant's property * * * despite the fact that [the] defendant had record title." DelSesto v. Lewis, 754 A.2d 91, 95 (R.I. 2000) (quoting Locke v. O'Brien, 610 A.2d 552, 555 (R.I. 1992)). Under the doctrine of acquiescence, "adjoining landowners are 'precluded from denying a boundary line recognized by both owners for a length of time equal to that prescribed by the statute of limitations barring a right of reentry.'" Acampora v. Pearson, 899 A.2d 459, 464 (R.I. 2006) (quoting Locke, 610 A.2d at 556). "The party claiming ownership by acquiescence must show 'that a boundary marker existed and that the parties recognized that boundary for a period * * * [of] ten years.'" DeCosta v. DeCosta, 819 A.2d 1261, 1264 (R.I. 2003) (quoting Pucino v. Uttley, 785 A.2d 183, 187 (R.I. 2001)). "[T]he element of recognition may be inferred from the silence of one party (or that party's predecessors in title), * * * as well as by affirmative acts." Pucino, 785 A.2d at 187. "Generally, 'the [boundary] line must be marked in a manner that customarily marks a division of ownership' and the marker must have been used for boundary purposes." Acampora, 899 A.2d at 465.

"A determination of acquiescence is a mixed question of law and fact." Nye, 992 A.2d at 1009 (quoting Acampora, 899 A.2d at 462). "[T]he issue of what constitute[s] the boundaries of a parcel of land is a question of law, [but] the determination of where such boundaries are is a question of fact." Id. (quoting Norton v. Courtemanche, 798 A.2d 925, 932 (R.I. 2002)).

- 9 -

Finally, "whether the boundary is sufficiently obvious to command notice is a question of fact." Acampora, 899 A.2d at 465.

In his decision, the trial justice noted that this case does not present the typical case of either adverse possession or acquiescence wherein a party is attempting to prove that a portion of land on one side of a boundary line has been adversely possessed by a person who does not have record title. The trial justice found that the evidence established that, from 1984 until 2007, plaintiff and the previous owners of the Brennan lot observed the line of trees running roughly along the Medeiros survey line as the dividing line between the two lots. The trial justice concluded that the tree line was a sufficiently obvious demarcation of a boundary line and that the Brennans' predecessors in title were on notice that the tree line was the boundary line. Accordingly, the trial justice found that the doctrine of acquiescence applied to establish the boundary line between the lots at the tree line. The trial justice explicitly clarified in denying the motion for a stay that his "use of the term 'tree line' in the [c]ourt's decision was meant to indicate the boundary line as established by the Medeiros survey."

While we have some reservations as to whether a naturally-occurring tree line may, under other circumstances, constitute a sufficiently obvious boundary so as to fall within the reach of the doctrine of acquiescence,[7] we cannot conclude that the trial justice erred in his findings. Further, we agree with the trial justice's conclusion that Banville proved that she had record title to the land up to the Medeiros survey line. The evidence in the record amply supports the trial justice's findings about plaintiff's continued use and maintenance of the property up until the

---

[7] This Court notes that the row of trees was not specifically planted by either party in order to serve as a boundary marker nor is there any allegation that they consist of either arborvitae or a hedgerow that may be commonly understood to denote a boundary. Cf. Acampora v. Pearson, 899 A.2d 459, 461, 463 (R.I. 2006) (holding that the doctrine of acquiescence had established a boundary line between two adjoining lots where the plaintiff had "planted a row of thirteen or fourteen arborvitae shrubs" along the line which she claimed as the boundary).

tree line. Having had the benefit of hearing the testimony of the witnesses and viewing the property, the trial justice's conclusion as to the location of the boundary line is entitled to deference.

Because we conclude that the trial justice's decision holding that the Medeiros survey line constituted the boundary line between the two lots was neither clearly erroneous nor did it fail to do substantial justice between the parties, we cannot, and will not, disturb the trial justice's decision on appeal.

**B**

**The Trial Justice's Award of Damages**

The defendants also argue that the trial justice erred in awarding damages to Banville based on the diminution in value of her property. According to defendants, Banville should not be entitled to damages because any award for diminution in value assumes that the encroachment would be permanent. Once the encroachments are removed, defendants assert, Banville would not suffer any diminution in value of her property.

It is well settled that our review of a trial justice's findings on damages is deferential. Sophie F. Bronowiski Mulligan Irrevocable Trust v. Bridges, 44 A.3d 116, 120 (R.I. 2012). In general, "the law is always concerned that an injured party shall be fully compensated for whatever injury he [or she] may have sustained." Hernandez v. JS Pallet Co., 41 A.3d 978, 984 (R.I. 2012) (quoting DeSpirito v. Bristol County Water Co., 102 R.I. 50, 53-54, 227 A.2d 782, 784 (1967)). While damages need not be proven "with mathematical exactitude," they should be "based on reasonable and probable estimates." Morabit v. Hoag, 80 A.3d 1, 15 (R.I. 2013) (quoting Butera v. Boucher, 798 A.2d 340, 350 (R.I. 2002)). This Court has previously stated that, in computing damages to real property, the law will generally distinguish between

permanent damage and temporary damage to it. See Tortolano v. DiFilippo, 115 R.I. 496, 502, 349 A.2d 48, 52 (1975). We have explained that,

> "[a]lthough there might be a case where factors such as the value of the property or the use to which it is put might render the cost of repair an unreasonably high measure of recovery, the general rule is that where the damage is temporary the cost of repair measure is proper and where the damage is permanent, the diminution in value measure is more appropriate." Bridges, 44 A.3d at 121 (quoting Tortolano, 115 R.I. at 502-503, 349 A.2d at 52).

The trial justice found that Banville had testified credibly as to how the Brennans' encroachment has adversely impacted her use and enjoyment of her property. The trial justice cited plaintiff's testimony that she has been required to move her pen for her animals, as well as having had her view negatively affected. The trial justice further accepted the credible testimony of Mr. Godfrey, plaintiff's real-estate expert, as to the diminution of the fair market value of Banville's property as a result of the encroachment. The trial justice therefore awarded damages to Banville in the amount of the diminution in the fair market value of her land.

We are of the opinion that the evidence in the record was more than sufficient to support the trial justice's award of monetary damages to plaintiff in addition to injunctive relief. While we acknowledge that the general rule is that diminution in value is an appropriate measure of damages only when the damage to real property is permanent, we conclude that the circumstances of this case justify an award for damages to plaintiff's property based on that rule. The cost of repair for temporary damage to his or her real property is generally awarded to the plaintiff as the person who would otherwise be responsible for the cost of correcting the damage caused by the defendant. That is not the situation here, as the plaintiff would not—indeed, could not—be responsible for the cost of removing the encroachment of the Brennans' building from her lot. Consequently, we conclude that the cost of restoration as measured by the cost of removing the encroachment is not an appropriate measure of damages in this case nor would it

adequately compensate Banville for the injury she has suffered as a result of defendants' behavior. See Restatement (Second) Torts § 929 (1979) (stating that compensatory damages for harm to land as a result of a past invasion that does not amount to a total destruction of value may include the difference in value of the land before and after the harm as well as damages for the loss of use of the land).

Indeed, we cannot concur with defendants' argument that plaintiff's property will be entirely restored to its original condition once the encroaching building is removed. The encroachment of the building is not the only manner in which plaintiff has been harmed by defendants' behavior. We note that defendants also painted markers onto plaintiff's home, placed a stone wall on her property, and significantly disrupted plaintiff's use and enjoyment of her property over a period of at least five years. The parties also do not dispute that plaintiff has been required to move her fence and her dog kennel to accommodate defendants' encroachment. In addition, plaintiff mentioned and defendants conceded at oral argument that at least a portion of the tree line has been destroyed as a result of defendants' encroachment. We are satisfied that the nature and extent of the various and ongoing harms plaintiff suffered over such a substantial period of time support an award of damages for diminution in value.

We also note that the trial justice observed that the Brennans' behavior over the course of this dispute has been less than admirable. The Brennans persisted in their conduct even after they had been informed by more than one of the longtime residents of the neighborhood that they were placing unsightly encroachments on plaintiff's property.[8]

We are satisfied that the trial justice was well within the bounds of his discretion in awarding the plaintiff damages for the diminution in the fair market value of her land.

---

[8] The trial justice, after viewing the property, specifically described the boulders as an "eyesore."

Furthermore, we cannot say that measuring damages according to the diminution in value was inconsistent with the loss of the plaintiff's use and enjoyment of her property, which she has suffered for a significant period of time. Indeed, in view of the defendants' willful encroachment, in the face of ample notice that there was a significant problem with the Murgo survey, and the real and lasting harm to the plaintiff's property as a result of the defendants' behavior, we agree with the trial justice that the award of $30,000 is not excessive nor does it otherwise shock the conscience of this Court.

## IV

## Conclusion

For the foregoing reasons, the judgment of the Superior Court is affirmed. The record in this case shall be remanded to that court.



# RHODE ISLAND SUPREME COURT CLERK'S OFFICE

## Clerk's Office Order/Opinion Cover Sheet

**TITLE OF CASE:**      Donna Banville v. Peter Brennan et al.

**CASE NO:**      No. 2011-384-Appeal.
(NC 08-236)

**COURT:**      Supreme Court

**DATE OPINION FILED:**  February 7, 2014

**JUSTICES:**      Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ.

**WRITTEN BY:**      Associate Justice Gilbert V. Indeglia

**SOURCE OF APPEAL:**      Newport County Superior Court

**JUDGE FROM LOWER COURT**:

      Associate Justice Stephen P. Nugent

**ATTORNEYS ON APPEAL:**

      For Plaintiff:  Jeremiah R. Leary, Esq.

      For Defendants:  Joseph R. Palumbo, Jr., Esq.