May 29, 2020

**Supreme Court**

No. 2018-337-Appeal.
(PC 18-1584)

Michael Colpitts                    :

v.                    :

W.B. Mason Co., Inc.                    :

NOTICE: This opinion is subject to formal revision before publication in the Rhode Island Reporter. Readers are requested to notify the Opinion Analyst, Supreme Court of Rhode Island, 250 Benefit Street, Providence, Rhode Island 02903, at Telephone 222-3258 of any typographical or other formal errors in order that corrections may be made before the opinion is published.

Michael Colpitts          :

v.                        :

W.B. Mason Co., Inc.      :

Present:  Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ.

# O P I N I O N

**Justice Robinson, for the Court.**   The plaintiff, Michael Colpitts, appeals from a November 8, 2018 judgment of the Providence County Superior Court in favor of the defendant, W.B. Mason Co., Inc. (W.B. Mason).  The plaintiff alleged that W.B. Mason had violated the Rhode Island employer drug testing statute, G.L. 1956 § 28-6.5-1(a)(1),[1] when, on March 5, 2018, his employer required him to take a drug test, purportedly without reasonable grounds, and ultimately terminated him for his refusal to do so.  On appeal, the plaintiff contends that the issue is whether or not the trial justice erred in "finding that WB Mason Co[.], Inc. had reasonable grounds [pursuant to § 28-6.5-1(a)(1)] to believe, based on specific aspects of [Mr. Colpitts's] performance and specific documented observations, concerning Michael Colpitts['s] appearance, behavior and speech, that he might have been under the influence of a controlled substance."

---

[1]      General Laws 1956 § 28-6.5-1(a)(1) provides as follows:

> "Employers may require that an employee submit to a drug test if * * * [t]he employer has reasonable grounds to believe based on specific aspects of the employee's job performance and specific contemporaneous documented observations, concerning the employee's appearance, behavior or speech that the employee may be under the influence of a controlled substance, which may be impairing his or her ability to perform his or her job * * *."

- 1 -

This case came before the Supreme Court for oral argument pursuant to an order directing the parties to appear and show cause why the issues raised in this appeal should not be summarily decided. After examining the written and oral submissions of the parties and after a thorough review of the record, we are of the opinion that cause has not been shown and that this appeal may be resolved without further briefing or argument.

For the reasons set forth in this opinion, we affirm the judgment of the Superior Court.

## I

## Facts and Travel

On March 9, 2018, Mr. Colpitts filed a verified complaint in Superior Court against W.B. Mason alleging that he had been a "supply driver" for W.B. Mason and that, on March 5, 2018, he suffered an injury to his right hand in the course of effecting a delivery as part of his work for W.B. Mason. The complaint alleged that he then returned to his worksite and reported the injury to his supervisor, Christopher Santos. The complaint further alleged that Mr. Colpitts "was not under the influence of drugs, intoxicating liquors, or any controlled substance which might have impaired his ability to perform his job." It added that W.B. Mason and its agents had no reasonable grounds, pursuant to § 28-6.5-1, to believe that Mr. Colpitts was under the influence of any controlled substance.

According to the complaint, W.B. Mason "wrongfully demand[ed]" that Mr. Colpitts undergo drug and alcohol testing. The complaint alleged that, on March 5, 2018, W.B. Mason suspended Mr. Colpitts and ultimately discharged him on March 8, 2018. It further alleged that W.B. Mason's actions were in violation of portions of chapter 6.5 of title 28 of the General Laws. Mr. Colpitts sought to be reinstated and to receive back pay, in addition to attorneys' fees and costs as well as punitive damages.

The matter was eventually scheduled for a consolidated hearing to address both preliminary relief and the merits. That hearing was conducted on August 16, 2018. We relate below the salient aspects of what transpired at the hearing.

## A

### The Testimony of Michael Colpitts

Mr. Colpitts testified that he was employed by W.B. Mason as a "supply delivery driver," starting in 2015. He added that he had "work[ed] continuously" at that position from July of 2015 until March of 2018.

With respect to his personal circumstances, Mr. Colpitts testified that he was a disabled veteran, having served in the United States Army. It was further his testimony that, in the course of that service, he was injured in Afghanistan and was subsequently honorably discharged from military service in April of 2013. He added that he received disability benefits from the Veterans Administration for injuries which he had sustained to his spine, knees, and left hip, as well as for Post Traumatic Stress Disorder. It was his testimony that, as a result of those injuries, he applied for and received a medical marijuana card in Rhode Island; he added that he began using marijuana therapeutically in 2017. However, it was his further testimony that he never used marijuana "on the clock or on the job" and that he was never "under the effects of marijuana" during the course of his employment.

It was Mr. Colpitts's testimony that, on the day in question, March 5, 2018, he injured his arm and back in the course of making his deliveries. He stated that he was unable to "finish that day" due to "shooting pains, extreme pain," which he characterized as being at the level of "10 out of 10." He further testified that, after suffering the injury, he drove back to the W.B. Mason warehouse. It was his testimony that, once back at the warehouse, he located Christopher

Santos, his supervisor. He stated that, when he found Mr. Santos, he "joked with him" and said: "'Are you ready to fill this out?'" It was Mr. Colpitts's testimony that Mr. Santos "didn't know what [he] was talking about" and that he therefore provided an explanation about his injury. Mr. Colpitts testified that he asked to leave to obtain medical treatment; he then stated the following with respect to Mr. Santos's response to that request: "There wasn't really much of a response. He said, 'We have to fill this out and talk to the boss' or something like that, 'first.'" He stated that Mr. Santos then left him for a period of between ten and fifteen minutes.

According to Mr. Colpitts's testimony, Mr. Santos returned with Mike Bonito, the branch manager. He stated that the men asked him how he was feeling and that he told them that he was in "lots of pain." He added that they "just kept questioning me" as to "when it happened, how it happened" and asked him "weird questions * * *." He stated that they then took him into a room and "started interrogating" him, telling him that he was under the influence. Mr. Colpitts testified that he responded that he was not under the influence, but rather was just in a lot of pain. It was then Mr. Colpitts's testimony that Mr. Bonito told him that he believed that he "'might be impaired, and we want to get you tested.'" He added that, in response, he "got quite angry."

Mr. Colpitts then testified with respect to the pain he was experiencing on the day in question, stating that he "felt like [he] was going to throw up the pain was so bad." He stated that he would "take a few seconds every now and then and kind of just swallow and try not to throw up." He added that his back was "killing" him and that he was "trying to crack it, kept bending over, basically trying to find relief * * *."

Mr. Colpitts testified that he did ultimately go to a facility called "Concentra" for medical care. He added that he was driven there in Mr. Santos's car. It was Mr. Colpitts's testimony that, during that car ride, he told Mr. Santos that he had a medical marijuana license and that he

- 4 -

"couldn't take a drug test because it would prove that [he] was -- [he] had smoked marijuana * * *." He added that he had no way to "prove that [he] didn't smoke marijuana within a certain amount of time, because it stays in your system." He testified that, once at Concentra, he was asked to take a "urinalysis drug test" and a breathalyzer. He stated that he refused to take the drug test but did take the breathalyzer, the results of which were "[n]egative." He testified that, after he had received medical attention, Mr. Santos told him to "go home and rest." Mr. Colpitts then testified that he met with Mr. Santos, Mr. Bonito, and one "Joanna Lowney" at W.B. Mason on March 8, 2018. He stated that, at that meeting, Ms. Lowney told him: "'You violated our fleet policy, so we have to terminate your employment * * *.'"

Mr. Colpitts conceded on cross-examination that he had not told W.B. Mason "anything at all" about his 2017 application for a medical marijuana license. Mr. Colpitts further conceded on cross-examination that, during his exchange with Mr. Santos and Mr. Bonito at the W.B. Mason warehouse, he did "stutter[ ] at times * * *." He added that he told them that he might "puke because of heartburn" and that he had "forgotten to take" his heartburn pills. He further conceded that he had sworn "excessively" when speaking to Mr. Bonito.

**B**

**The Testimony of Christopher Santos**

Christopher Santos testified that he was the "warehouse manager" for the W.B. Mason facility in Cranston. It was his testimony that, prior to the incident in question, he had a "good working relationship" with Mr. Colpitts. He stated during his testimony that, on March 5, 2018, he did not receive any notice from Mr. Colpitts that he would be returning to the warehouse in the middle of the day. He further stated that Mr. Colpitts was suddenly "standing there." He added that Mr. Colpitts then said to him: "'Are you ready to fill this out?'" He added that he did

not understand what Mr. Colpitts meant. Mr. Santos testified that Mr. Colpitts then described how he had been injured. He stated that Mr. Colpitts "kept clenching over, he kept bending over or putting his hands on his knees, bending over at the time." He described Mr. Colpitts's behavior as "weird * * *."

Mr. Santos testified that he tried "to get more information, because it was unclear as to what happened. He was jumping all over the place;" he added that it was "very off * * * the whole description of the incident." It was Mr. Santos's testimony that he then assisted Mr. Colpitts with filling out an injury report. According to Mr. Santos, he next "sought counsel" from "H.R. representative" "Joanne Lowney" because he "had a suspicion that [Mr. Colpitts] wasn't right, that something was going on." He testified that Ms. Lowney told him to "seek another opinion of somebody else that was in the warehouse * * *." He stated that he then located Mike Bonito.

It was Mr. Santos's further testimony that Mr. Bonito then spoke with Mr. Colpitts, after which Mr. Bonito and Mr. Santos agreed that "something wasn't quite right * * *." According to Mr. Santos, the two men then spoke with Mr. Colpitts together, during which conversation Mr. Bonito told Mr. Colpitts: "'For your own safety we'd like to have you go over and get a drug test to make sure you're all right, get your injury checked out, make sure you're all right.'" In describing this exchange, Mr. Santos characterized the following as "unusual" behavior by Mr. Colpitts:

> "He was very excessive with the 'F' word, which is not uncommon in the warehouse, but when you are talking to the branch manager [Mr. Bonito], it's very out of the ordinary, first of all. When [Mr. Colpitts] was describing the incident when he first came back he was just all over the place describing -- he didn't know which hand it was, didn't know how he went back in the truck. It was all over the place. He wasn't making complete sentences. It was very, very odd * * *."

Mr. Santos added that Mr. Colpitts "kept staggering, going back and forth, bending over, constantly bending over saying, 'I'm f***ed up.' He constantly would say that." He further testified that, when bending over, Mr. Colpitts said: "'I need to catch my breath'" and "'I was going to puke * * *.'"

Mr. Santos next testified that, after Mr. Colpitts was asked to undergo a drug test, he "got very agitated" and told Mr. Santos and Mr. Bonito that he was "'just going to go back to work'" and was "'fine.'" Mr. Santos added that he and Mr. Bonito told Mr. Colpitts he could not go back to work and that he then accompanied Mr. Colpitts to Concentra. It was Mr. Santos's testimony that, during the drive, Mr. Colpitts showed him his medical marijuana card and told him that that was the reason he could not take a drug test.

On cross-examination, Mr. Santos acknowledged that Mr. Colpitts did tell him that he thought his wrist was broken. He also stated that he did not believe that he had noticed any redness in Mr. Colpitts's eyes. It was further his testimony on cross-examination that one of the reasons he was concerned about Mr. Colpitts on March 5 was the fact that Mr. Colpitts had not called the warehouse to report his injury before simply returning to the warehouse. When directly asked on cross-examination if Mr. Colpitts's behavior indicated drug use, Mr. Santos stated: "It indicated to me that something wasn't quite right with him." He added that it "could have been pain, it could have been something else;" "he possibly could have been on something that day."

## C

### The Testimony of Michael Bonito

Michael Bonito testified that he was the branch manager at W.B. Mason's Cranston facility. It was his testimony that, on March 5, 2018, Mr. Santos detailed to him his concerns

with respect to Mr. Colpitts's behavior. He testified that he then spoke to Mr. Colpitts, whose explanation of his injury was "a bit distorted." He elaborated as follows: "I was having a hard time following the explanation relative to his arm * * *." He testified that it was his understanding that Mr. Colpitts had injured his wrist. He then stated that Mr. Colpitts seemed "relatively relaxed for somebody that was in agonizing pain." According to Mr. Bonito, Mr. Colpitts was "overly relaxed with his use of language." Mr. Bonito further testified: "That is what caught me off guard the most was that it was just a barrage of 'F' bombs, but not in an angry or chaotic way that you may be if you had just hurt yourself." He stated that his conversation with Mr. Colpitts lasted a "few minutes * * *."

According to Mr. Bonito's testimony, he left the room in which he had been conversing with Mr. Colpitts but later returned, along with Mr. Santos, to continue speaking to Mr. Colpitts. It was his testimony that he asked Mr. Colpitts if everything was "okay" and received a response that was a "bit disjointed" relative to Mr. Colpitts's concerns about his job and his being in the process of buying a house. With respect to his observations about Mr. Colpitts's physical movements, Mr. Bonito stated that at one point Mr. Colpitts "abruptly started to make a swallowing -- like he was trying to swallow, and then he bent down almost in a linebacker position where his hands were down by his knees sort of hunched down, and I thought that was odd to me." He added that Mr. Colpitts then apologized and stated that he thought he was going to "puke" and that he felt that way when he forgot to take his heartburn medication.

It was Mr. Bonito's testimony that he then told Mr. Colpitts that he would like him to get a drug test while at Concentra. He added that Mr. Colpitts "got irate" and stated that he was "fine" and would return to work. Mr. Bonito testified that he did not see any evidence that Mr.

Colpitts was in extreme pain that day. On cross-examination, Mr. Bonito acknowledged that he did not notice that Mr. Colpitts's eyes were dilated and did not recall if his eyes were red.

On October 5, 2018, after the close of the trial, the trial justice rendered a bench decision, concluding that Mr. Santos and Mr. Bonito had reasonable grounds to believe that Mr. Colpitts was under the influence of a controlled substance. On November 8, 2018, judgment entered denying Mr. Colpitts's request for a preliminary injunction and entering judgment on the merits for W.B. Mason. Mr. Colpitts appealed.[2]

## II

### Standard of Review

This Court "give[s] great weight to the factual findings of a trial justice sitting without a jury in a civil matter, and we will not disturb such findings unless they are clearly erroneous or unless the trial justice misconceived or overlooked material evidence or unless the decision fails to do substantial justice between the parties." *Banville v. Brennan*, 84 A.3d 424, 429-30 (R.I. 2014) (internal quotation marks omitted); *see also Arnold v. Arnold*, 187 A.3d 299, 310 (R.I. 2018); *Arnold Road Realty Associates, LLC v. Tiogue Fire District*, 873 A.2d 119, 126 (R.I. 2005). The reason for according such a substantial amount of deference to the credibility determinations of the trial justice is "the fact that [he or she] has actually observed the human drama that is part and parcel of every trial and * * * has had an opportunity to appraise witness demeanor and to take into account other realities that cannot be grasped from a reading of a cold record." *Banville*, 84 A.3d at 430 (internal quotation marks omitted); *see also B.S. International*

---

[2] The plaintiff filed a premature notice of appeal of the October 5, 2018 bench decision on October 19, 2018, before the November 8, 2018 judgment entered. However, this Court will treat the premature appeal as if it had been timely filed. *See Terzian v. Lombardi*, 180 A.3d 555, 557 n.4 (R.I. 2018); *see also Goddard v. APG Security-RI, LLC*, 134 A.3d 173, 175 (R.I. 2016).

*Ltd. v. JMAM, LLC*, 13 A.3d 1057, 1062 (R.I. 2011); *In re Dissolution of Anderson, Zangari & Bossian*, 888 A.2d 973, 975 (R.I. 2006).

We will also apply "a deferential standard of review to the trial justice's resolution of mixed questions of law and fact, as well as the inferences and conclusions drawn from the testimony and evidence * * *." *Banville*, 84 A.3d at 430 (internal quotation marks omitted). However, we "review[ ] a trial justice's conclusions on questions of law *de novo*." *Arnold*, 187 A.3d at 311 (internal quotation marks omitted).

## III

## Analysis

## A

### The Trial Justice's Decision

The trial justice began her bench decision on October 5, 2018 by detailing the basic facts and arguments at issue. With respect to the testimony regarding the events of March 5, the trial justice concluded that she found all of the witnesses to be credible and did not find that anyone had been attempting to mislead the court. She then proceeded to determine whether or not, pursuant to § 28-6.5-1(a)(1), W.B. Mason had reasonable grounds on March 5, 2018 to believe that Mr. Colpitts was under the influence of a controlled substance.

The trial justice specifically stated that she had "struggled" with the case because some of Mr. Colpitts's "bizarre" behavior "could be consistent with someone who is under the influence of a controlled substance," but she added that "[i]t could also be consistent with someone who had just experienced an extremely painful injury." However, she then concluded that "reasonable grounds [do not] have to be the only grounds;" she stated that "[s]ure, it could be

- 10 -

consistent with pain, but it also could be consistent with drug use."  In her words, "just because

there's competing explanations doesn't mean that their request was unreasonable."

The trial justice then stated as follows:

> "[Mr. Santos and Mr. Bonito] talked about the fact that [Mr. Colpitts] would call in frequently and, yet, despite suffering this jarring injury as was described to me, there wasn't a single phone call. They described him walking into the warehouse, and without a piece of paper, any explanation, approaching Mr. Santos and saying, 'Well, are you going to fill the paperwork out?' And, by Mr. Colpitts's own admission, it was like in a joking fashion."

The trial justice also specifically noted Mr. Colpitts's "incoherent recitation," "volatile

behavior," and "the use of profanity" before ultimately concluding as follows:

> "I think all of this together -- keep in mind the low standard, just a reasonable ground. Is that reasonable? It suggests to me that it is. It wasn't baseless. They didn't come out of left field with this. They observed his appearance, his behavior, and his speech and thought[,] * * * [i]n the vernacular, that something was off. So, I can't say that their request was unreasonable."

In the end, the trial justice found in favor of W.B. Mason and denied Mr. Colpitts any of

the remedies which he was seeking.[3]

**B**

**Discussion**

Mr. Colpitts contends on appeal that there was "absolutely no evidence that [he] was

under the influence of any drug, and specifically under the influence of marijuana."  He states

that Mr. Santos and Mr. Bonito did not testify that he "stumble[d], walk[ed]

unsteadily, * * * exhibit[ed] any other traits of intoxication[,] * * * [or] that his speech was

---

[3]     We note that the trial justice also referenced the principle that "when someone does come to the Court seeking assistance, they do, in fact, need to come with clean hands * * *."  She was referring to what were, as Mr. Colpitts conceded on cross-examination, inaccuracies in the answers he had provided at the medical examination which he was required to take in order to drive the particular truck he drove for W.B. Mason.

slurred." According to Mr. Colpitts, the fact that he was acting "out of character" does not satisfy § 28-6.5-1(a)(1). He argues that the use of obscenities is "not an indicia of drug use," nor is arriving back at the warehouse without calling beforehand. He further avers that "walk[ing] in circles and bend[ing] down" were indications of pain, not drug use. Finally, he states that "[t]here was no articulated evidence upon which a reasonable person could have believed that [he] was under the influence of a controlled substance."

W.B. Mason contends that "[s]ubstantial testimonial evidence supported the court's determination" in this case.[4]

In assessing the contentions of the parties on appeal, it is our view that we are confronted with a mixed question of law and fact. "A mixed question of law and fact is one in which the rule of law is undisputed, and the issue is whether the facts satisfy the statutory standard." *Johnston v. Poulin*, 844 A.2d 707, 714 (R.I. 2004) (internal quotation marks omitted). The language of § 28-6.5-1(a)(1) is undisputed as it relates to this case, and we are merely concerned with whether or not the facts satisfy the standard articulated in that statute. Therefore, we accord deference to the trial justice's findings and conclusions. *See Banville*, 84 A.3d at 429-30.

Section 28-6.5-1(a)(1) is a part of the employer drug testing statute, and it provides as follows:

---

[4] W.B. Mason also raises an issue with respect to the possible preemption of § 28-6.5-1(a)(1) by federal law. That issue was raised below, and the trial justice addressed it thoroughly in her bench decision. She ultimately found that there was no preemption. Mr. Colpitts does not raise any issue as to preemption on appeal. W.B. Mason contends on appeal that the trial justice erred in finding that there was no preemption in this case. However, that issue is not properly before the Court because W.B. Mason opted not to file a cross-appeal. *See Miller v. Metropolitan Property and Casualty Insurance Company*, 88 A.3d 1157, 1162 n.8 (R.I. 2014) ("A cross appeal is not necessary when the appellee simply wants to defend the judgment obtained below, even if it is on grounds different from those on which the judgment was based. However, if the prevailing party in the trial court wishes to overturn one of the lower court's rulings below, a cross appeal must be filed.") (internal quotation marks omitted).

> "Employers may require that an employee submit to a drug test if * * * [t]he employer has *reasonable grounds to believe based on* specific aspects of the employee's job performance and *specific contemporaneous documented observations, concerning the employee's appearance, behavior or speech that the employee may be under the influence of a controlled substance*, which may be impairing his or her ability to perform his or her job * * *."
> (Emphasis added.)

Accordingly, this Court is confronted with the question of whether or not the trial justice abused her discretion in concluding that, based on the testimony at trial, Mr. Santos and Mr. Bonito had reasonable grounds to believe that Mr. Colpitts was under the influence of a controlled substance on March 5, 2018 and, therefore, to require that he take a drug test.

After a thorough review of the testimony and the decision of the trial justice, we are unable to say that the trial justice abused her discretion in this case. Mr. Santos testified at length with respect to the "odd" behavior of Mr. Colpitts on March 5; and Mr. Bonito's testimony was largely consistent with that of Mr. Santos. Mr. Santos testified as to the failure of Mr. Colpitts to call in to the warehouse after his injury despite it being his habit to do so. Mr. Santos and Mr. Bonito both testified to Mr. Colpitts being unable to clearly articulate what had occurred when he sustained his injury. They further testified to his bending over, repeated use of obscenities, staggering, and saying that he was going to "puke." What is more, Mr. Santos testified to his belief on that day that Mr. Colpitts "could have been on something." It is clear that the testimony of Mr. Santos and Mr. Bonito was based on contemporaneous observations concerning Mr. Colpitts's appearance, behavior, and speech. *See* § 28-6.5-1(a)(1). The trial justice expressly relied on the testimony of Mr. Santos and Mr. Bonito in holding that they had reasonable grounds to believe that Mr. Colpitts was under the influence of a controlled substance on March 5 and that, therefore, they were authorized to require that he undergo a drug test. In our judgment, the trial justice clearly did not abuse her discretion in so concluding.

- 13 -

On appeal, Mr. Colpitts takes issue with the trial justice's interpretation of the testimony. He argues that the behavior that was characterized as being "odd" was not indicative of drug use. He points out that no one testified that he stumbled or slurred his words or walked unsteadily. However, it appears to be Mr. Colpitts's implied contention that the behavior observed by the employer must lead ineluctably to the conclusion that the employee is under the influence of a controlled substance and not to any other conclusion. He further impliedly contends that *only* those physical symptoms that are typically associated with the use of a controlled substance would suffice to establish reasonable grounds to believe he was under the influence. We are unable to agree.

We note that the trial justice herself stated that she "struggled" with the case due to the fact that there was more than one available inference that could have been drawn from Mr. Colpitts's behavior. It is true that Mr. Colpitts's behavior may have appeared to different observers as being indicative of his being in pain. Indeed, Mr. Santos admitted on cross-examination that "it could have been pain * * *." However, as the trial justice ultimately recognized, that does not mean that said behavior was not also possibly indicative of the employee being under the influence of a controlled substance. The employee's behavior does not need to be such that it could lead to *only* a conclusion that he or she is under the influence of a controlled substance. The statute at issue clearly and unambiguously does not require *actual knowledge* that the employee is definitely under the influence, nor that the employee manifest the specific symptoms usually associated with being under the influence; the statute requires only that there be *reasonable grounds* to believe that the employee is under the influence of a controlled substance. *See Planned Environments Management Corp. v. Robert*, 966 A.2d 117, 121 (R.I. 2009) ("[W]e adhere to the principle that when the language of a statute is clear and

unambiguous, this Court must interpret the statute literally and must give the words of the statute their plain and ordinary meanings.") (internal quotation marks omitted). Mr. Santos and Mr. Bonito are not medical professionals, and neither of them should have been expected to distinguish between symptoms of pain and indicia of being under the influence. The statute certainly does not require that the employer possess that degree of medical sophistication.

There were ample facts in this case on the basis of which the trial justice could have reached the conclusion that *reasonable grounds* existed on March 5 for the request that Mr. Colpitts take a drug test. *See* Black's Law Dictionary 1518 (11th ed. 2019) (defining "reasonable" as "[f]air, proper, or moderate under the circumstances; sensible[;] * * * [a]ccording to reason"). Accordingly, giving the trial justice the deference to which she is entitled when passing on a mixed question of law and fact, we are unable to perceive any error in this case. The trial justice made findings of fact and made her legal determination based on those findings of fact. She did not abuse her discretion.

We are not unsympathetic to the physical and non-physical toll that Mr. Colpitts's service in the United States Army has taken on him. But we are restricted to dealing with the facts as they have been presented to us, and we have arrived at our decision within the bounds of the law.

## IV

## Conclusion

For the reasons set forth herein, we affirm the judgment of the Superior Court. The record may be remanded to that tribunal.

STATE OF RHODE ISLAND AND PROVIDENCE PLANTATIONS

## SUPREME COURT – CLERK'S OFFICE

## OPINION COVER SHEET

| | |
|---|---|
| **Title of Case** | Michael Colpitts v. W.B. Mason Co., Inc. |
| **Case Number** | No. 2018-337-Appeal.<br>(PC 18-1584) |
| **Date Opinion Filed** | May 29, 2020 |
| **Justices** | Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ. |
| **Written By** | Associate Justice William P. Robinson III |
| **Source of Appeal** | Providence County Superior Court |
| **Judicial Officer From Lower Court** | Associate Justice Maureen B. Keough |
| **Attorney(s) on Appeal** | For Plaintiff:<br><br>Bernard Patrick Healy, Esq. |
| | For Defendant:<br><br>Andrew B. Prescott, Esq. |